Per Curiam :
This case was referred pursuant to Rule 57 to Trial Commissioner William E. Day, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on December 14,1964. Plaintiffs have excepted to the opinion and certain of the findings of fact. Defendant has requested that the court adopt the commissioner’s findings and recommended conclusions of law. The parties have filed briefs and the case has been argued orally. Since the court agrees with the commissioner’s'findings, his opinion and his recommended conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiffs are, therefore, not entitled to recover and their petition is dismissed.
Opinton op Commissioner
The principal question involved in this case is whether Mrs. Oritt’s check in the amount of $563,704.94, which was transmitted to the Nashawena Associates, Inc., (hereinafter referred to as Nashawena), in 1952, constituted a payment of interest on a loan, and thus was deductible for income tax purposes. Petitioner claims that she obtained a loan of $49,-621,564.25, from Nashawena and that the payment was interest on the indebtedness thus created.
Section 23(b) of the Internal Kevenue Code of 1939 (26 U.S.C. 23(b). (1952 ed.) )i allowed interest deductions for income tax purposes only with respect to “interest paid or accrued within the taxable year on indebtedness * * “Interest on * * * indebtedness” has been defined to mean “compensation for the use or forbearance of money”, Deputy v. Dupont, 308 U.S. 488, 498 (1940), or “the amount which one has contracted to pay for the use of borrowed money” Old Colony R. R. Co. v. Commissioner, 284 U.S. 552, 560 (1932).
In form, the transaction giving rise to the loan to the taxpayer, involved a sale by Nashawena to Mrs. Oritt on December 24, 1952 of U.S. Treasury notes, 1%%, having a par value of $50,000,000 and a due date of March 15, 1954. Mrs. Oritt sent Nashawena a check for $75,000 as a down *1139 payment and supposedly borrowed tbe remainder of the purchase price from Nashawena. Nashawena in turn bought $25,000,000 par value of 1%% Treasury notes due March 15, 1954, from C. F. Childs & Co. and a like amount from C. J. Devine & Co. These security dealers delivered the bonds to the Guaranty Trust Company for Nashawena’s account. On the same day, the same bonds were sold back to the dealers.
On December 26,1952, the taxpayer executed a promissory note, which stated that she promised to pay Nashawena $49,621,564.25, on March 15,1954, plus 2.3% interest per an-num. This note was a non-recourse collateral note, the collateral being the Treasury notes. Under the terms of the note, Nashawena was given the right to hypothecate and use the pledged notes for any purpose. On December 30, 1952, the taxpayer issued Nashawena a check for the first payment of interest on the note in the amount of $563,704.94.
• The entire transaction was closed out on paper in October, 1953. At that time, Nashawena simply reversed the process. It purchased in its own name $50,000,000 par value United States Treasury notes, and then turned around and immediately sold the same notes, in the name of the taxpayer, right back to the dealer.
In reality however, the transaction did not involve any real Treasury notes or any real money. Treasury notes were not actually delivered to either Mrs. Oritt or to Nashawena for her benefit. As a consequence, neither Mrs. Oritt nor Nashawena had physical possession of the notes. No payment was ever made to either C. F. Childs & Co. or D. J. Devine & Co., by either Mrs. Oritt or by Nashawena for the Treasury notes purportedly purchased for Mrs. Oritt. No funds were ever advanced by Nashawena to Mrs. Oritt to finance the purchase of Treasury notes.
In spite of the fact that Mrs. Oritt sent Nashawena a check for $563,704.94 in the guise of payment of interest, this check could not constitute a payment of interest, as no funds were ever advanced to her. Furthermore, on the same day that taxpayer sent Nashawena her check for “interest” in accord with a previous agreement between Nasha-wena and her counsel, Nashawena “loaned” her $547,966.62 *1140 (th8 difference in these amounts represents a discount of $15,738.32) and sent her a check for this amount.
The above transaction therefore, did not result in any indebtedness to the taxpayer. The check for $563,704.94 that she sent to Nashawena thus did not constitute “compensation for the use or forbearance of money”. The transaction entered into by the taxpayer is practically identical to the type of transaction that has been held by a long list of cases to have created no genuine indebtedness. Jockmus v. United States, 335 F. 2d 23 (2d Cir. 1964); Dooley v. Commissioner, 332 F. 2d 463 (7th Cir. 1964) ; Lewis v. Commissioner, 328 F. 2d 634 (7th Cir. 1964); Williams v. Commissioner, 323 F. 2d 656 (9th Cir. 1963); Nichols v. Commissioner, 314 F. 2d 337 (5th Cir. 1963); Rubin v. United States, 304 F. 2d 766 (7th Cir. 1962); MacRae v. Commissioner., 294 F. 2d 56 (9th Cir. 1961), cert. denied 368 U.S. 955 (1962); Becker v. Commissioner, 277 F. 2d 146 (2d Cir. 1960); Lynch v. Commissioner, 273 F. 2d 867 (2d Cir. 1959); Goodstein v. Commissioner, 267 F. 2d 127 (1st Cir. 1959); Broome v. United States, 145 Ct. Cl. 298, 170 F. Supp. 613 (1959).
The taxpayer relied upon the case of Stanton v. Commissioner (34 TC 1 (1960)). That case is clearly distinguished on the facts from the present situation. In Stanton, the transaction was what it purported to be. The lender (the bank) actually advanced the money borrowed for the taxpayer’s use. The securities became the property of the taxpayer, he had all the benefits and risks of ownership. The Treasury notes were held as security by the lender of the money. (Stanton, supra, at 8)
For the reasons stated above, it is recommended that the petitioner is not entitled to recover, and that her petition should be dismissed.
FiNdings or Fact
1. The plaintiff, Mrs. Selma Oritt, is an individual. She is a citizen of the United States, and presently resides in Miami Beach, Florida. Mrs. Selma Oritt and her now deceased husband, Samuel Oritt, jointly filed federal income *1141 tax returns for the calendar year ended December 31, 1952, the short taxable period of January 1,1953, through September 30,1953, and the taxable years ended September 30,1954, and September 30,1955. The change from a calendar year to a taxable period ended September 30 was motivated by tax-saving considerations. (As the major portion of the income reported on these returns was that of Mrs. Selma Oritt, and the transactions in issue were entered into by her alone, the term “taxpayer” shall be used hereinafter to refer to her individually.)
2. The taxpayer was one of the founders of the Diana Stores Corporation which operates a chain of women’s apparel stores, and is currently listed on the New York Stock Exchange. For some time prior to 1952, she was an officer and director of that corporation. During 1952 the taxpayer sold 100,000 shares of Diana Stores stock receiving therefor $1,092,000. Her basis in the stock was only $12,500; therefore, she realized a taxable long-term capital gain of $1,079,500 as a result of this sale. Under the alternative tax provisions of the Internal Revenue Code of 1939, Section 117(b), (26 U.S.C. Sec. 117(¡b) (1952 ed.)) pertaining to the tax treatment of long-term capital gains, 50 percent of that amount was includible in her taxable income. The return filed by the taxpayer and her husband, Samuel Oritt, for the year 1952 reported a total taxable income of $692,157.55. However, a claimed deduction in the amount of $563,704.94 for interest allegedly paid to Nashawena Associates, Inc., (hereinafter referred to as Nashawena) plus other ordinary deductions, eliminated the adjusted gross income in its entirety, so that there was not any taxable income on which to pay taxes.
3. In 1952, Miss Gertrude Priester, a Certified Public Accountant, was engaged by Nashawena. In addition to her other duties, she was paid a sales commission on every “Livingston type” transaction that she would sell. In this connection, in 1952 she approached J. Stanley Halperin, explained the transaction to him and showed him copies of favorable Revenue Rulings pertaining to the transaction which had been issued to M. Eli Livingston.
*1142 4. From 1952 through. 1956, J. Stanley Halperin was retained by the taxpayer as her tax counsel. In this capacity he has rendered her tax advice, but has never acted as an investment counselor. Mr. Halperin believed that the type of Treasury note transaction, as described hereinafter, was a tax-saving device which would save her a substantial amount of tax.
5. Nashawena was incorporated under the laws of the State of Massachusetts on October 20, 1952. The office address was 10 Post Office Square, Boston, Massachusetts. The initial capitalization of Nashawena was $20,000. As of March 31, 1953, its balance sheet was as follows:
Assets
Cash_ $98, 092.31
Accounts receivable, customers_ 56, 609. 65
Notes receivable, customers_ 105,185,200.96
Total_$105, 339, 902.92
Liabilities
Accounts payable_ $6, 835. 30
Commercial paper — short_ 9, 840, 554.28
Security sales — short_ 94, 042,968.75
Accrued. Int. Pay_ 164,780.60
Deferred Int. Income_ 1,091,387.48
Deposit on Contract_ 13, 500.00
Capital stock with par value- 20,000.00
Surplus_ 159, 876.51
Total_$105,339, 902. 92
6. Nashawena went out of business some time during 1954 as a result of the revocation by the Commissioner of Internal Revenue of the so-called “Livingston Rulings” which dealt with transactions of the type here in issue.
7. During 1952 Mr. Halperin brought to the attention of the taxpayer the “Livingston type” Treasury note transaction. Mr. Halperin showed the taxpayer copies of the so-called Livingston Rulings. The taxpayer thereafter entered in to the transaction which is described below.
8. Both Mr. Halperin and Nashawena framed the transaction for the taxpayer so that it would fit within the fact pattern, of the Livingston Treasury Ruling. On December *1143 23,1952, Mr. Halperin sent a letter to Nashawena outlining the terms of the transaction as follows:
(1) There is herewith delivered to you my client’s cheek in the sum of $75,000.00, made payable to your order, receipt of which you herewith acknowledge.
(2) You agree to arrange for the purchase of $50,000,-000.00 U.S. Treasury Notes, 1% due 3/15/54 at the market but not in excess of 99%2n(l plus accrued interest, against the purchase price of which there shall be applied the $75,000.00 herewith enclosed, which purchase shall be completely consummated not later than December 29,1952.
(3) At the same time, you will arrange to make a loan to my client in an amount sufficient to cover the difference between the cost of the notes, inclusive of accrued interest, and the $75,000.00 herewith enclosed. This loan, to be made to my client by you, will run with interest at the rate of not more than 2.3% per annum and will mature March 15, 1954. It is understood that you will arrange to make payment for the notes directly to the seller (or brokerage firm negotiating the sale) for the account of my client, which payment shall consist of the $75,000.00 herewith enclosed plus the amount of the loan. It is further understood that the note which my client will sign will be as set forth in Exhibit A herewith attached.
(4) It is understood that upon receipt of the notice of the delivery and payment for the notes, my client will deliver an executed note in the form set forth in Exhibit A herewith attached, the date of which note shall be the date on which payment for the . notes is made.
(5) It is further understood that upon receipt of the notice of the delivery and payment for the notes, my client will give to you a letter confirming the fact that the purchase of the said notes was made for the account of my client, in the form as set forth in Exhibit B herewith attached.
(6) It is further understood that, upon the request of my client prior to January 15, 1953, you will make an additional loan to my client in an amount not in excess of the sum of $560,690.12, discounted at the same rate of interest as the interest rate set forth in (3) above per annum, which discount shall be *1144 deducted in advance, provided the interest required to be paid by my client on or before December 31, 1952 has been so paid. Said additional loan shall be upon the same terms and conditions and subject to the same limitation of personal responsibilities as the note set forth in Exhibit A and upon the same collateral security as set forth in said Exhibit A, and the terms of said Exhibit A are to be incorporated by reference in the note covering this additional loan. The note which my client will sign in the event such additional loan is requested, and which you agree you will make upon such request, shall.be in the form as set forth in Exhibit C herewith attached.
(7) It is understood and agreed that all arrangements respecting the purchase of the notes are conditioned upon the making of the loan by you and that you will arrange for such loan prior to the placing of the order for the purchase of the notes.
(8) It is further understood and agreed that in the event you are unable to arrange for the purchase of the full $50,000,000.00 U.S. Treasury Notes on or before December 29, 1952 and make payment therefor not later than December 30, 1952, my client shall have the option to either cancel this arrangement or else to treat this agreement as being applicable and effective to such principal amount of said U.S. Treasury Notes as you have, by that time, been able to arrange for the purchase thereof. In such latter case, all amounts, including the $75,000.00 herewith being paid, the amount of the note set forth in item :(3) above, the amount of the additional loan set forth in item (6) above and the required interest payments set forth in Exhibit A shall be adjusted proportionately in the same ratio as the principal amount actually purchased bears to $50,000,000.00 and there shall then be immediately refunded to my client such proportion of the said $75,000.00 as is in excess of the amount required as a deposit based on the figures herewith contained as so adjusted. In the event my client elects not to purchase any of said U.S. Treasury notes because of your inability to arrange for the purchase of the mil $50,000,000.00 then and in such event you will immediately refund to my client the $75,000.00 herewith enclosed.
(9) It is further understood. and agreed that in any event, whether or not the transaction is consum *1145 mated, you shall not be entitled to any compensation for services rendered, guarantee or any other payments from my client, except, of course, that if the transaction is consummated, you shall be entitled to such payments as are provided for herein-above.
9. In accordance with the letter written by Mr. Halperin (finding 8), on December 23, 1952, the taxpayer issued a check in the amount of $75,000 payable to Nashawena Associates, Inc. The letter written by the taxpayer to Nashawena forwarding this check further states in part:
Please instruct C. J. Devine & Co. or C. F. Childs & Co., Inc., to deliver these bonds to the Guaranty Trust Company for your account, against payment.
10. On December 26, 1952, the taxpayer executed the following instrument, which was delivered to Nashawena Associates, Inc.:
On March 15, 1954, I promise to pay to NASHA-WENA ASSOCIATES, INC., the sum of — Forty-nine Million Six Hundred Twenty-one Thousand Five Hundred Sixty-four and 25/100_Dollars together with interest at the rate of 2.3% per annum, subject to the following rights and conditions, having deposited with the said obligee the following:
$50,000,000.00 U.S. Treasury Notes, 1% due 3/15/54. The interest on this note is due and payable as follows:
On or before December 31, 1952, the sum of $563,704.94;
On March 15, 1953, the sum of $343,750.00;
On September 15, 1953, the sum of $147,185.75; At maturity, the sum of $343,750.00.
On each interest date the undersigned shall have the right to have the interest from the coupons on the notes pledged as collateral credited to her, and shall pay the obligee the interest due under this instrument, it being understood that the excess of the proceeds of the Sept. 15, 1953 coupon over the amount of interest payable on said date, shall be applied against the principal of this note.
The undersigned gives to the obligee a lien against the securities pledged for the amount of the obligation set forth herein, and gives to the obligee the right to hy-pothecate and use the securities pledged for any purpose while so pledged.
*1146 The undersigned shall not be called upon nor be liable to furnish additional collateral to the obligee at any time.
The undersigned shall have the right to order the immediate sale or liquidation of the securities pledged at any time, whether at the maturity date or otherwise, and shall have the right to have the proceeds, realized from such sale or liquidation, applied to discharge the entire indebtedness of the undersigned. At the time of such sale or liquidation, interest under this instrument shall cease.
The undersigned shall not be liable for any deficiency as to principal or interest arising at the time of such sale or liquidation from such proceeds; and payment of all obligations of the undersigned under this instrument shall be made from and only from, and be charged against and only against the proceeds of such sale or liquidation and from no other source whatsoever, this note being without recourse against the undersigned. The required application of such proceeds from such sale or liquidation shall be a full and complete discharge of any and all liability of the undersigned under this instrument.
The undersigned shall have the right to prepay, in whole or in part, the principal of this note, and in the event of prepayment of such principal interest on the amount so prepaid shall no longer be payable. At any time payment of any or all of the principal on this note is so prepaid, whether by application of the Sept. 15, 1953 coupon as hereinabove set forth, sale and/or liquidation of the securities pledged prior to the maturity of this note and/or other prepayment, interest will be computed and payable at the rate of one-fourth of one percent (%%) on the amount so prepaid.
This transaction shall not be cancelled nor concluded by NashaweNA associates, inc., prior to the maturity ox this note.
(S) Selma Oritt
11. The foregoing note contained the exact language set forth in Exhibit A of Mr. Halperin’s letter to Nashawena bearing date of December 23,1952.
12. By confirmation dated December 24,1952, C. J. Devine & Co., a dealer in Government securities, confirmed the sale on that date to Nashawena of $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, at a price of $99 per each hundred dollars of par value, totaling *1147 $24,750,000, plus accrued interest to December -29, 1952, of $99,706.50, for the total amount of $24,849,706.50. The confirmation further indicated that delivery was to be made at the Guaranty Trust Company, on December 29, 1952.
13. By confirmation dated December 24,1952, C. J. Devine & Co. confirmed the purchase on that date from Nashawena of $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, at a price of $98-63/64, totaling $24,746,098.75, plus accrued interest to December 29, 1952, of $99,706.50, for the total amount of $24,845,800.25. The confirmation further indicated that delivery was to be made at the Guaranty Trust Company on December 29,1952.
These sales were identified in the files of Nashawena as relating to the Oritt account.
14. The difference in price of the %4 in the above-described purchases and sale between C. J. Devine & Co. and Nasha-wena represents the profit which Devine made for the handling of this transaction.
15. The Guaranty Trust Company, New York, New York, maintains a department which clears securities for various brokers and other purchasers or sellers of securities. The function of the bank in a clearing operation when its customer is purchasing securities is to receive the securities from the dealer, or other seller, count the securities, determine that they are valid, and make payment to the dealer or other seller in behalf of the purchaser. The bank’s duties as a clearing agent when its customer is a seller of securities consist of receiving the securities from the customer, counting them, determining the validity of the securities, and then making delivery to the securities dealer .or other purchaser and receiving payment from such purchaser on behalf of the customer. The bank receives a clearance fee for the performance of this service.
16. The Guaranty Trust Company issued a debit advice to Nashawena advising it that on December 29, 1952, the bank received for the account of Nashawena from C. J. Devine & Co., $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, and, further, that the *1148 bank had charged the account of Nashawena a total of $24,849,706.50. The advice listed the numbers of the notes it' received. The settlement date of this transaction was also December 29, 1952. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
17. The Guaranty Trust Company issued a credit advice to Nashawena, advising it that on December 29, 1952, it had delivered to C. J. Devine & Co., for the account of Nasha-wena $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, and, further, that the bank had credited the account of Nashawena a total of $24,845,-800.25. The advice indicated that the transaction was authorized “by letter of 12/24/52.” It did not indicate the numbers of the notes that were delivered. The bank charged Nashawena a clearance fee of $1,250 for this transaction.
18. The above transaction was effectuated by having a messenger from C. J. Devine & Co. deliver the Treasury notes to the Guaranty Trust Company, and the bank then credited Devine’s account with an amount representing the net sales price of the notes. The same messenger also took with him a check drawn by Devine on the Guaranty Trust Company and made payable to the Guaranty Trust Company, in order to pay for the purchase of the Treasury notes back from Nashawena. The notes were then immediately brought back to the offices of C. J. Devine & Co. The messenger stayed at the bank during the short period of time that the securities were being received by the bank, checked and counted and then delivered out again to Devine. The securities were in the possession of the bank for approximately thirty minutes.
19. By confirmation dated December 26,1952, C. F. Childs and Co., a dealer in Government securities, confirmed the sale on that date to Nashawena of $25,000,000 par value United States Treasury notes, 1% percent, due March 15, 1954, at a price of $99, totaling $24,750,000 plus accrued interest of $96,857.75, for the net amount of $24,846,857.75. This confirmation bore C. F. Childs & Co.’s trade number 902. The confirmation further indicated that delivery was to be made at the Guaranty Trust Company.
*1149 20. The Accounting Department records of C. F. Childs & Co. indicate that delivery of these $25,000,000 par value United States Treasury notes was made in three separate lots: one of $5,000,000 par value and two of $10,000,000 par value each.
21. By confirmation dated December 26,1952, C. F. Childs & Co. confirmed the purchase on that date from Nashawena of $25,000,000 par value, United States Treasury notes, 1% per cent, due March 15, 1954, at a price of $98-63/64, totaling $24,746,093.75, plus accrued interest to December 26, 1952, of $96,857.75, for the total amount of $24,842,951.50. This transaction was identified in the files of Nashawena as relating, to the Oritt account.
22. The Guaranty Trust Company issued a debit advice to Nashawena advising it that on December 26,1952, the bank received for the account of Nashawena from C. F. Childs & Co. $5,000,000 par value, United States Treasury notes, 1% per cent, due March 15,1954, and, further, that the bank had charged the account of Nashawena a total of $4,969,371.55. The settlement date of this transaction was also December 26, 1952. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
23. The Guaranty Trust Company issued a credit advice to Nashawena advising it that on December 26, 1952, it had delivered for the account of Nashawena to C. F. Childs & Co. $5,000,000 par value, United States Treasury notes, 1% percent, due March 15,1954, and, further, that the bank had credited the account of Nashawena a total of $4,968,590.30. The settlement date of this transaction also was December 26, 1952. The bank charged Nashawena a clearance fee of $250 for this transaction. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
24. The Guaranty Trust Company issued a debit advice to Nashawena advising it that on December 29, 1952, the bank received for the account of Nashawena from C. F. Childs & Co. $10,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, and, further, that the bank had charged the account of Nashawena a total of $9,938,743.10. The settlement date of this transaction was December 29. *1150 1952. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
25. The Guaranty Trust Company issued a credit advice to Nashawena advising it that on December 29,1952, it had delivered for the account of Nashawena to C. E. Childs & Co. $10,000,000 par value, United States Treasury notes, 1% per cent, due March 15, 1954, and, further, that the bank had credited the account of Nashawena a total of $9,937,180.60. The settlement date of this transaction also was December 29, 1952. The bank charged Nashawena a clearance fee of $500 for this transaction. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
26. The Guaranty Trust Company issued a debit advice to Nashawena advising it that on December 29, 1952, the bank received for the account of Nashawena from C. F. Childs & Co. $10,000,000 par value, United States Treasury notes, 1% percent, due March 15,1954, and, further, that the bank had charged the account of Nashawena a total of $9,938,743.10. The settlement date of this transaction was December 30, 1952. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
27. The Guaranty Trust Company issued a credit advice to Nashawena advising it that on December 29, 1952, it had delivered for the account of Nashawena to C. F. Childs & Co. $10,000,000 par value, United States Treasury notes, 1% percent, due March 15,1954, and, further, that the bank had credited the account of Nashawena a total of $9,937,-180.60. The settlement date of this transaction also was December 30, 1952. The bank charged Nashawena a clearance fee of $500 for handling this transaction. The advice indicated that the transaction was authorized “by letter of 12/24/52.”
28. The copies of the credit advices described in findings 17, 23,25 and 27 hereinabove, contained in the files of Nash-awena, each bore the hand-printed word “ORITT.” The name of the taxpayer was hand-printed in pencil on each of these advices by Miss Priester in order to identify the particular customer of Nashawena to which it related.
29. The above transaction was effectuated by having a *1151 messenger from C. F. Childs & Co. deliver the Treasury notes to the Guaranty Trust Company. The bank then credited the Childs account with an amount representing the net sales price of the notes. The bank then performed its clearing operations, namely, the counting of the securities, verification of their authenticity, and the charging of the various accounts.- The bank then sent the same securities back to C. F. Childs & Co. usually by its own messenger. The clearing operation takes somewhere between 15 minutes and two hours.
30. On December 30, 1952, Nashawena sent a letter to the taxpayer advising:
In accordance with your letter of December 23,1952, we have purchased $50,000,000 U.S. Treasury Notes— 1%% due 3/15/54, as follows:
From O. F. Childs & Oo. — December 26, 1952:
Purchased $25,000,000 at 99_$24, 750,000.00
Interest Accrued_ 96, 857.75
Total___ 24, 846,857.75
From C. J. Devine & Co. — December 24,1952:
Purchased $25,000,000 at 99_$24,750,000.00
Interest Accrued_ 99,706.50
Total_ 24, 849, 706. 50
Grand Total_ 49,696,564.25
The original _ purchase slips from C. F. Childs & Co. and C. J. Devine & Co. are attached hereto for your records.
These bonds have been delivered to the Guaranty Trust Company in accordance with your instructions and payment was made by us as per photostatic copy of debit memos enclosed herewith.
31. (a) No Treasury notes were actually delivered by either C. F. Childs & Co. or C. J. Devine & Co. to taxpayer, or to Nashawena for her benefit, pursuant to the instruments mentioned in findings 8,9,10 and 291.
(b) No payment was actually made to either C. F. Childs & Co. or C. J. Devine & Co. by taxpayer, or by Nashawena *1152 on her behalf, for the Treasury notes mentioned in findings 8,9,10,12,16,19,22,24,26 and 30.
(o) No funds were actually advanced or paid by Nasha-wena to taxpayer by virtue of instruments mentioned in findings 8(3) and 10.
32. On December 30, 1952, taxpayer issued a check to Nashawena in the amount of $563,704.94. This check purported to constitute a prepayment of interest due on the promissory note dated December 26, 1952. This check was received by Nashawena at 4:20 P.M. on December 30, 1952.
' As set forth above, the taxpayer and Nashawena had a prior agreement that the amount of $563,704.94 would be immediately repaid to the taxpayer in the form of a loan. (Finding 8.) Accordingly, on January 2, 1953, the taxpayer executed a promissory note due March 15, 1954, payable to Nashawena in the amount of $563,704.94. On the same day, January 2,1953, Nashawena issued a certified check payable to the taxpayer in the amount of $547,966.62 ($563,-704.94 less discount of $15,738.32).
33. On March 16,1953, Nashawena wrote to taxpayer that it credited her interest account with $343,750 representing the March 15, 1953 coupons on $50,000,000 U.S. Treasury 1%% notes due March 15,1954.
On September 15,1953, Nashawena wrote to taxpayer that it credited her interest account with $147,185.75, and reduced her note dated December 26,1952 by $196,564,25, a total of $343,750 representing the September 15, 1953 coupons on $50,000,000 U.S. Treasury 1%% notes due March 15,1954.
34. The entire transaction was closed out on paper in October, 1953, in such a fashion as to create the illusion that the taxpayer had actually sold Treasury notes. In reality, the process used at the beginning of the transaction was merely reversed. Nashawena sold $50,000,000 par value, United States Treasury notes, for the account of the taxpayer and on the same day it purchased an equal amount of notes to cover the sale. The mechanics of these dealings are described in the following findings.
35. By letter dated October 6,1953, the taxpayer requested C. F. Ohilds & Co. to receive from Nashawena and/or their *1153 designee $50,000,000 United States Treasury notes, 1% percent, due March. 15,1954, and pay Nashawena or their designee the net proceeds from the sale.
36. By letter dated October 6,1953, the taxpayer directed C. F. Childs & Co. to sell for her account $25,000,000 United States Treasury notes, 1% percent, due March 15, 1954 at $99-28.5/32 plus accrued interest, and $25,000,000 United States Treasury notes, 1% percent, due March 15, 1954, at $99-29/32 plus accrued interest.
37. By confirmation dated October 6, 1953, C. F. Childs & Co. confirmed the purchase from Mrs. Selma Oritt of $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, at a price of $995%4, totaling $24,972,656.25, plus accrued interest to October 7, 1953, of $20,890.89, for the total amount of $24,993,547.14. The confirmation further stated that delivery was to be made at the Chase National Bank for the account of the Cleveland Trust Company for payment in Federal funds. This confirmation bore C. F. Childs & Co.’s trade number 111.
The Accounting Department records of C. F. Childs & Co. indicate that delivery of these notes was made in three separate lots: one of $10,000,000 par value and two of $7,500,000 par value each.
38. By confirmation dated October 6, 1953, C. F. Childs & Co. confirmed the purchase from Mrs. Selma Oritt of $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, at a price of $992%2, totaling $24,976,562.50, plus accrued interest to October 7, 1953, of $20,890.89, for the total amount of $24,997,453.39. The confirmation further stated that delivery was to be made at the Chase National Bank for the account of the Cleveland Trust Company for payment in Federal funds. This confirmation bore C. F. Childs & Co.’s trade number 112.
The Accounting Department records of C. F. Child & Co. indicate that delivery of these notes was made in three separate lots: one of $10,000,000 par value, and two of $7,500,000 par value each.
39. By confirmation dated October 6, 1953, C. F. Childs & Co. confirmed the sale on that date to Nashawena of *1154 $25,000,000 par value, United States Treasury notes, 1% percent, due March 15, 1954, at a price of $992%2, totaling $24,976,562.50, plus accrued interest to October 7, 1953, of $20,890.89, for the total amount of $24,997,453.39. The confirmation further indicated that delivery was to be made at the Chase National Bank for the account of the Cleveland Trust Company for payment in Federal funds. This confirmation bore C. F. Childs & Co.’s trade number 113.
40. The other side of this transaction is shown by confirmation dated October 6, 1953, when C. F.' Childs & Co. confirmed the sale on the date to Nashawena of $25,000,000 par value, United States Treasury notes, 1% percent, due March 15,1954, at a price of $995%4,.totaling $24,980,468.75, plus accrued interest to October 7,1953 of $20,890.89, for the total amount of $25,001,359.64. The confirmation further indicated that delivery was to be made at the Chase National Bank for the account of the Cleveland Trust Company for payment in Federal funds. The confirmation bore C. F. Childs & Co.’s trade number 114.
41. The Chase National Bank, acting as the New York correspondent of the Cleveland Trust Company, received the Treasury notes described in findings 37 and 38 from C. F. Childs & Co. in six separate transactions occurring during the period of October 7, 1953 through October 9, 1953, and delivered out to C. F. Childs & Co. the very same notes during the same day on which those particular notes were received, in accordance with the confirmations described in findings 39 and 40. The Cleveland Trust Company charged Nashawena $2,750 for this clearance operation.
42. The Treasury notes purchased by C. F. Childs & Co. on October 6, 1953, from the taxpayer in the transactions described in findings 37 and 38 bore the very same numbers as the Treasury notes sold on that same date by C. F. Childs & Co. to Nashawena in the transactions described in findings 39 and 40.
43. The copies of the confirmations described in findings 39 and 40, contained in the files of Nashawena, each bore the hand-printed word “OBITT.” The name of the tax *1155 payer was hand-printed in pencil on each of these confirmations by Miss Priester in order to identify the particular customer of Nashawena to which it related.
44. On or about October 6, 1953, Nashawena repaid the taxpayer the sum of $43,157.42. The net amount paid by the taxpayer to Nashawena in the entire transaction was $47,580.90, computed as follows:

Payments to Nashawena Rebates from Nashawena

December 23, 1952_ $75, 000. 00 January 2, 1953_$547,966.62
December 30, 1952_ 563,704.94 October 6, 1953_ 43,157.42
Total_$638,704.94 Total_$591,124.04
Net difference — $47,580.90
45. The taxpayer made the following payments to J. Stanley Halperin:
October 7, 1953_$27,000
November 14, 1953.___. 10,000
Total_ $37,000
The above amounts were paid to Halperin as fees for services rendered in connection with the Treasury note transaction.
46.The Treasury note transaction described above was reported by taxpayer on the Federal income tax returns, which she filed jointly with her husband, in the following manner:
Calendar year ended December 31, 195%:
Interest deduction in the amount of $563,704.94.

Short taxable period ended September 30,1953:

1. Interest income in the amount of $490,935.75.
2. Interest deduction in the amount of $490,935.75.

Taxable year ended September 30,195J^:

1. Interest income on United States Treasury notes
in the amount of $41,781.78.
2. Interest income of $36,544.78 as an alleged rebate
from Nashawena on account of interest accruing on the Treasury notes.
3. Interest expense of $11,421.27.
4. Deduction for $37,000 paid to Halperin.
5. Long-term capital gain upon sale of United States
*1156 Treasury notes, 1% percent, due March. 15,1954, in the amount of $449,218.75.
47. The returns filed by the taxpayer jointly with her husband for the taxable years ending in 1952 through 1955 were audited by an Internal Eevenue Agent, who recommended that all entries on these tax returns which resulted from the “Livingston type” transaction be eliminated. The Eevenue Agent recommended the following specific adjustments which pertained to the transaction here in issue:

Oalendar year ended December 31,1952 :

Disallowance of the interest deduction in the amount of $563,704.94.

Short taxable period ended September 30,1953:

1. Elimination of the interest income in the amount of $490,935.75.
2. Disallowance of the interest deduction in the amount of $490,935.75.

Taxable year ended September 30,1954.:

1. Disallowance of the interest deduction in the amount of $11,421.27.
2. Disallowance of a deduction for payments to Hal-perin in the total amount of $37,000.
3. Elimination of interest income from the Treasury notes in the amount of $41,781.78.
4. Elimination from income of the purported rebate of interest from Nashawena in the amount of $36,544.78.
5. Elimination of capital gain upon the alleged sale of United States Treasury notes in the amount of $449,218.75.
6. The agent recommended that the total out-of-pocket loss which resulted from this Treasury note transaction, the amount of $84,580.90, be allowed as a short-term capital loss in accordance with the holding in BeeJeer v. Commissioner, 277 F. 2d 146 (2d Cir.). This loss consists of the $37,000 paid to Halperin plus the net amount of $47,580.90 paid to Nashawena.

Taxable year ended September 30,1955:

Allowance of the unused capital loss from the prior year which would come into bemg as a result of the recommended adjustments as a capital loss carryover to this year.
*1157 48.As a result of the foregoing recommendations, together with other proposed adjustments not here in issue, the following assessments were duly and timely made against the taxpayer:

49. The above amounts have now been paid in full by the taxpayer. A claim for refund was timely filed for the year 1952 and subsequently disallowed.
50. The parties hereto have stipulated that should the Court hold for the taxpayer, the amount of recovery is to be $328,760.58 consisting of tax and assessed interest, plus statutory interest on that amount.
51. The transaction into which the taxpayer entered was designed to create the illusion that she had actually purchased $50,000,000 par value, United States Treasury notes, 1%% due March 15,1954, and that she had made a bona fide loan in order to finance the purchase of these notes on account of which loans she supposedly prepaid interest in the amount of $563,704.94 during 1952, which payment it was hoped would constitute a deduction for Federal income tax purposes. In reality, neither the taxpayer nor Nashawena owned Treasury notes for any significant amount of time, and no loan was ever made to the taxpayer by anyone concerned, to finance the purchase of Treasury notes.
Conclusion of Law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law *1158 that the plaintiffs are not entitled to recover, and their petition is therefore dismissed.