Sumner E. and Barbara P. BROWN

v.

The UNITED STATES.

No. 35–65.

United States Court of Claims.

June 14, 1968.

John M. Doukas, Boston, Mass., attorney of record, for plaintiffs.

Michael I. Sanders, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant, Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

LARAMORE, Judge.

This case involves another aspect of the income tax consequences which have burgeoned from the transactions devised by Livingstone & Company (hereinafter referred to as Livingstone). The record before us is a stipulation of facts which, succinctly stated, discloses a typical "Livingstone" transaction.

Plaintiffs, Sumner E. and Barbara P. Brown, husband and wife, filed joint Federal personal income tax returns for the calendar years ending December 31, 1955 and December 31, 1956.

On November 16, 1954, Sumner E. Brown, hereinafter sometimes referred to as plaintiff, directed Livingstone to purchase $1,500,000 in United States Treasury Bonds, due May 15, 1957, with the interest coupons of May 15, 1955

and November 15, 1955 detached. Livingstone confirmed the bond purchase at a price of 98⅜, making the total cost to plaintiff $1,475,625.

On the same day, November 16, plaintiff executed a 1-year note in the amount of $1,475,625 (the total cost of the bonds). The note had been given to him by Livingstone and was made payable to Gail Finance Corporation, hereinafter sometimes referred to as Finance. In addition, Livingstone gave plaintiff letters of instruction which directed Livingstone to deliver the bonds to Finance as security for the $1,475,625 note. Plaintiff signed and returned the letters and the note to Livingstone together with a $36,890.63 check dated December 8, 1954, payable to Finance, which represented one year of interest on the note at the rate of 2½ percent per annum.

The note stated that plaintiff had deposited the bonds with Finance as collateral for the loan and that Finance had a lien against the bonds. No provision was made for reimbursement of prepaid interest in the event of a prepayment of principal. Plaintiff could not be required to furnish additional collateral at any time. Moreover, plaintiff was not personally liable for any of the principal indebtedness or interest in excess of the proceeds which might be obtained from the sale of the bonds. If the proceeds from the sale of the bonds exceeded the debt due Finance, that additional amount was payable to plaintiff. At no time did plaintiff actually obtain physical possession of any bonds. Finance was not affiliated with Livingstone by common ownership, but at all relevant times it received substantially all of its business from Livingstone. The stipulation, however, does not indicate whether Livingstone actually purchased any bonds or delivered the collateral to Finance.

On October 28, 1955, almost one year later, Livingstone sent plaintiff the documents required to close out the transaction. A confirmation slip dated November 15, 1955, stated that Livingstone had purchased the bonds from plaintiff at the price of 100¼ and that plaintiff had realized $1,503,750 from the sale. Plaintiff then signed a letter directing Finance to deliver the bonds to Livingstone and asking Livingstone to remit $1,475,625 directly to Finance.

To summarize the results of these transactions, plaintiff paid $36,890.63 in 1954 as "prepaid interest," and in 1955 he received a long-term capital gain of $28,125 (the proceeds of the sale of $1,503,750, less the cost of the bonds of $1,475,625). Plaintiff deducted the interest on his 1954 tax return and reported the long-term capital gain on his 1955 return.

On October 24, 1957, the Commissioner of Internal Revenue mailed a statutory notice of deficiency for the tax years 1953 and 1954 of $7,905.28 and $21,347.76, respectively. In addition, he proposed an overassessment of $7,504.59 for the tax year 1955. The notice provided that the 1955 overassessment would be made the subject of a certificate for overassessment provided plaintiff fully protected himself against the statute of limitations by filing a protective claim for refund. Plaintiff, however, did not file a protective claim.[1]

The Commissioner's denial of plaintiff's interest deduction, because it was not paid for the use of borrowed funds, created the $21,347.76 deficiency in 1954. Pursuant to an agreement of the parties, the Tax Court affirmed the Commissioner's action by its order of August 29, 1962. Plaintiff no longer questions the propriety of an interest deduction.

The effect of that interest deduction denial, as summarized in the stipulation of facts, was to increase plaintiff's out-of-pocket cost for the bonds by $36,890.63. Plaintiff's total cost for the bonds was

1. The government concedes that plaintiff would have been entitled to a refund if he had filed a timely claim for refund of the capital gains tax paid on the $28,125 reported (as capital gain) in 1955.

increased to $1,512,515.63 (the note of $1,475,625 plus the prepaid interest of $36,890.63). The proceeds of sale, as explained above, were only $1,503,750. Plaintiff, therefore, claims an $8,765.63 long-term capital loss on the transaction.[2]

Brown filed a refund claim on January 8, 1963 for $7,504.59 (1955) and $1,925.80 (1956) based on a reduction of his reported capital gains by the newly-created capital loss.[3] To date no action has been taken by the Commissioner of Internal Revenue on these claims. This suit resulted.

We are faced with the threshold question of whether the net out-of-pocket cost to plaintiff of $8,765.63 is a deductible capital loss. Only if it were deductible would we be required to determine the applicability of the mitigation provisions (sections 1311–1315)[4] upon which plaintiff relies to recover refunds for tax years which, at the time of this suit, were barred by the statute of limitations. We find, however, that the capital loss was not the result of a transaction entered into for profit, and therefore it is not deductible under section 165(c).[5]

2. 1955 Capital loss (as adjusted):

| | |
|---|---:|
| Bonds cost | $1,475,625.00 |
| Interest on loan to purchase bonds disallowed by Tax Court | 36,890.63 |
| Total cost | 1,512,515.63 |
| Sale (11/15/55) proceeds | 1,503,750.00 |
| Capital loss | (8,765.63) |
| Capital gain—short term | 78.45 |
| Capital loss | (8,678.18) |

3. Plaintiffs' claims for refund are based on the following calculations:

*1955*

| | | |
|---|---:|---:|
| Taxable income | | $66,845.30 |
| Less capital gain | | 14,140.95 |
| | | 52,704.35 |
| Less allowable loss | | 1,000.00 |
| | | 51,704.35 |
| Tax liability as adjusted (less exemptions and credits) | | $17,257.40 |
| Tax liability reported | | 24,761.99 |
| Refund | | 7,504.59 |

*1956*

| | | |
|---|---:|---:|
| Taxable income | | $48,652.80 |
| Less net capital gain | | 3,837.69 |
| | | 44,815.11 |
| Less net capital loss: | | |
| L.T.C.G. | $7,675.39 | |
| Capital loss carryover | 7,687.18 | |
| Net capital loss | | (11.79) |
| Taxable income (adjusted) | | 44,803.32 |
| Tax liability | | 15,842.17 |
| Tax reported | | 17,767.97 |
| Refund | | 1,925.80 |

4. All section references are to the Internal Revenue Code of 1954, 68A Stat. 3, unless otherwise specified.

5. Section 165(c) (2) (68A Stat. 49) provides, in pertinent part:
"SEC. 165. LOSSES
"(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*     \*     \*     \*     \*

"(c) Limitation on Losses of Individuals.—In the case of an individual, the duction under subsection (a) shall be limited to—

\*     \*     \*     \*     \*

I

Deductions for prepaid interest have been denied by an ever-increasing number of courts in a wide variety of Livingstone-type transactions that create simulated debts, paid for by personal notes and secured by the Treasury bonds or notes which have been purchased with the borrowed money. (Similar artificial debts have been created by the use of annuity contracts). The purported interest paid on these "debts" has been uniformly held non-deductible as interest expenses under section 163(a) [6] because it was not paid on a genuine commercial indebtedness. First Circuit: Sonnabend v. Commissioner of Internal Revenue, 267 F.2d 319 (1st Cir. 1959), (Treasury notes—§ 23(b)) [7]; Goodstein v. Commissioner of Internal Revenue, 267 F.2d 127 (1st Cir. 1959), (Treasury notes—§ 23 (b)). Second Circuit: Becker v. Commissioner of Internal Revenue, 277 F.2d 146 (2d Cir. 1960), (Treasury notes—§ 23(b)); Lynch v. Commissioner of Internal Revenue, 273 F.2d 867 (2d Cir. 1959), (Treasury notes—§ 23(b)); Jockmus v. United States, 335 F.2d 23 (2d Cir. 1964), (Treasury notes—§ 163(a)); Minchin v. Commissioner of Internal Revenue, 335 F.2d 30 (2d Cir. 1964), (Annuity contract—§§ 23(b) and 163(a)); Goldstein v. Commissioner of Internal Revenue, 364 F.2d 734 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (Treasury notes—§ 163(a)); Barnett v. Commissioner of Internal Revenue, 364 F.2d 742 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (Treasury obligations—§ 163(a)). See: Benenson v. United States, 385 F.2d 26 (2d Cir. 1967). Third Circuit: Weller v. Commissioner of Internal Revenue, 270 F.2d 294 (3d Cir. 1959), cert. denied,

364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223 (1960), (Annuity contract—§ 23(b)). Fourth Circuit: Bridges v. Commissioner of Internal Revenue, 325 F.2d 180 (4th Cir. 1963), (Treasury notes—§ 163 (a)). Fifth Circuit: Nichols v. Commissioner of Internal Revenue, 314 F.2d 337 (5th Cir. 1963), (Treasury notes—§ 163 (a)); United States v. Roderick, 290 F.2d 823 (5th Cir. 1961), reversing per curiam, 4 AFTR 2d 5569 (W.D.Tex. 1959). Sixth Circuit: Gheen v. Commissioner of Internal Revenue, 331 F.2d 470 (6th Cir. 1964), (Treasury notes—§ 163(a)). Seventh Circuit: Lewis v. Commissioner of Internal Revenue, 328 F.2d 634 (7th Cir. 1964), cert. denied, 379 U.S. 821, 85 S.Ct. 43, 13 L.Ed.2d 32 (Treasury notes); Rubin v. United States, 304 F.2d 766 (7th Cir. 1962), (Treasury notes—§ 23(b)); Dooley v. Commissioner of Internal Revenue, 332 F.2d 463 (7th Cir. 1964), (Treasury notes —§ 163(a)); Knowles Electronics, Inc. v. United States, 365 F.2d 43 (7th Cir. 1966), (Treasury bonds). Ninth Circuit: Kaye v. Commissioner of Internal Revenue, 287 F.2d 40 (9th Cir. 1961), (Treasury bonds—§ 23(b)); MacRae v. Commissioner of Internal Revenue, 294 F.2d 56 (9th Cir. 1961), cert denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962), (Treasury notes and bonds—§ 23(b)); Pierce v. Commissioner of Internal Revenue, 311 F.2d 894 (9th Cir. 1962), cert. denied, 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 413 (1963), (Annuity contract— § 163(a)); Cahn v. Commissioner of Internal Revenue, 358 F.2d 492 (9th Cir. 1966), (Treasury notes—§ 163(a)); Williams v. Commissioner of Internal Revenue, 323 F.2d 656 (9th Cir. 1963). Court of Claims: Oritt v. United States, 357 F.2d 692, 174 Ct.Cl. 1136 (1966),

"(2) losses incurred in *any transaction entered into for profit*, though not connected with a trade or business; * * *. [Emphasis added]."

6. Section 163(a) of the Internal Revenue Code of 1954, 68A Stat. 46, reads: "SEC. 163. INTEREST.
"(a) General Rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

7. Internal Revenue Code of 1939, 53 Stat. 12. Section 23(b), the predecessor of section 163(a) of the 1954 Code, reads: "SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
* * * * *
"(b) Interest.—All interest paid or accrued within the taxable year on indebtedness, * * *."

(Treasury bonds—§ 23(b)); Broome v. United States, 170 F.Supp. 613, 145 Ct.Cl. 298 (1959), (Treasury notes—§ 23(b)). The Tax Court followed this trend and denied the interest deduction claimed by Brown. Consequently, the non-deductibility of plaintiff's "interest" deduction is no longer an issue in this case.

Several taxpayers, realizing the near impossibility of obtaining an interest deduction in the Livingstone-type transaction, have turned their ingenuity to other sections of the Internal Revenue Code to salvage some tax benefit from their abortive attempt to obtain an interest deduction. Some have claimed that the amount expended as "interest" was an ordinary and necessary expense incurred for the production or collection of income and, therefore, deductible under section 23(a) (2) of the Internal Revenue Code of 1939 (or section 212 of the Internal Revenue Code of 1954).[8] The reasoning of those courts which have consistently denied a section 212 deduction in a Livingstone-type transaction because the expense did not arise in connection with a profit-seeking venture is germane to plaintiff's attempt to prevail on his claim for a section 165(c) deduction.

In Lynch v. Commissioner of Internal Revenue, supra, the taxpayer participated in a transaction almost identical to the one involved in this case. The same Gail Finance Company financed a Treasury note purchased made by Livingstone on behalf of the taxpayer. Affirming the non-deductibility of the purported interest payment, the Court of Appeals for the Second Circuit also denied tax-

payer's alternative claim under section 212 and found that "the amounts by which taxpayers were out of pocket were not 'expenses paid or incurred during the taxable year for the production or collection of income.'" (273 F.2d at 873). Relying on the statement in Goodstein v. Commissioner of Internal Revenue, supra, that the interest payment was an item of cost to be considered in the taxable year in which the transaction is completed, the court, in Lynch, characterized the transaction as an option contract under which the taxpayer might "call" upon Gail to deliver the notes after payment of the indebtedness. (The propriety of this approach will be discussed at a later point).

In Lewis v. Commissioner of Internal Revenue, supra, the Court of Appeals for the Seventh Circuit similarly denied the claimed section 212 deduction. The Livingstone transaction interest payment, the court determined, could not be characterized as professional fees paid to Livingstone for tax advice because the expense "had no business origin." (328 F.2d at 639). Moreover, the expense "did not arise in connection with taxpayers' profit-seeking activities. What taxpayers sought to gain was a consequence resulting in a lower tax." (328 F.2d at 639).

The Seventh Circuit was again faced with a section 212 deduction claim in Dooley v. Commissioner of Internal Revenue, supra, another Livingstone transaction wherein the taxpayer characterized his out-of-pocket expenditure as either professional fees deductible under section

---

**8.** Section 23(a) (2) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942, 56 Stat. 819, reads:

"SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

"(a) EXPENSES.—

    *     *     *     *     *

"(2) Non-trade or non-business expenses.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, * * *."

Section 212 of the Internal Revenue Code of 1954, 68A Stat. 69, reads:

"SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income; or

"(3) in connection with the determination, collection, or refund of any tax."

212(3) or as expenses incurred in the production of income and deductible under section 212(1). The court concluded "that taxpayer's possibility of profit was illusory." (332 F.2d at 468). The expense, therefore, could not be characterized as an expense incurred for the production of income or as professional fees.

Two decisions of the Tax Court have denied the availability of a section 212 deduction in comparable circumstances. In Carl Shapiro, 40 T.C. 34 (1963), a Livingstone transaction, the court concluded that the expense was "not related to the production or collection of income." (40 T.C. at 39). The court held that despite taxpayer's stated intention to obtain a profit, "we do not believe that he ever expected to make any profit * *," (40 T.C. at 39). In J. George Gold, 41 T.C. 419 (1963), the court affirmed Shapiro and, quoting from that decision, concluded:

[T]he avoidance of taxes hardly qualifies as the "production or collection of income" under the statute, either literally or by any implication that is supported by any relevant legislative history. [41 T.C. at 428].

No court has permitted a taxpayer to obtain a section 212 deduction for the purported interest paid and plaintiff has not urged us to re-examine the applicability of section 212. The obstacles which faced taxpayers who have been denied a section 212 deduction face plaintiff in the only question before the court, i. e.,

the availability of a capital loss deduction under section 165(c).

## II

Plaintiff relies on Becker v. Commissioner of Internal Revenue, supra (Second Circuit), MacRae v. Commissioner of Internal Revenue, supra (Ninth Circuit), and Goodstein v. Commissioner of Internal Revenue, supra (First Circuit), to establish the deductibility of his loss by characterizing the transaction as a valid and enforceable contract which results in a deductible loss. Upon close analysis, however, that reliance is misplaced.

In both *Becker* and *MacRae* the courts first characterized the Livingstone type transactions as option agreements (as did the court in Lynch v. Commissioner of Internal Revenue, supra) under which the taxpayer could "call" for the Treasury notes upon payment of the debt. The courts approved a deduction for the net out-of-pocket loss under section 117 (g) (2) (section 1234 of the Internal Revenue Code of 1954) [9] concluding that the loss was "attributable to the failure to exercise privileges or options to buy or sell property, * * *." MacRae v. Commissioner of Internal Revenue, 294 F.2d at 60. (Accord: Becker v. Commissioner of Internal Revenue, 277 F.2d at 149).

In *Becker* the court simply avoided a decision on the applicability of section 23(e) (2) [10] (the predecessor of section

9. Section 117(g) (2) of the Internal Revenue Code of 1939, 53 Stat. 52, reads:
"SEC. 117. CAPITAL GAINS AND LOSSES
     *     *     *     *     *
"(g) Gains and Losses from Short Sales, Etc.—For the purpose of this chapter—
     *     *     *     *     *
"(2) gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as short-term capital gains or losses."
Section 1234 of the Internal Revenue Code of 1954, as amended, 72 Stat. 1644, reads:
"SEC. 1234. OPTIONS TO BUY OR SELL.

"(a) Treatment of Gain or Loss.—
"Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which has the same character as the property to which the option or privilege relates has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him)."

10. Section 23(e) (2) of the Internal Revenue Code of 1939, 53 Stat. 13, reads:
"SEC. 23. DEDUCTIONS FROM GROSS INCOME.
"In computing net income there shall be allowed as deductions:
     *     *     *     *     *

165(c)), under which the taxpayer claimed a capital loss, by stating that a controversy with respect to that section exists but that it will not pass upon it. (277 F.2d at 149). In *MacRae*, however, the court held that the out-of-pocket expenses which were not deductible as interest "are not properly deductible under Section 23(e) (2)." (294 F.2d at 59). The court explained:

> * * * To allow such out-of-pocket expenditure[s] as a loss incurred in a transaction entered into for profit would be inconsistent with our * * * holding that the transactions here involved were not in substance purchases of securities with borrowed money entered into for profit, but were in reality attempts to simulate such security transactions for the purpose of artificially creating tax deductions. [294 F.2d at 59–60].

Both the court in *Becker* and the court in *MacRae* found legal rights and obligations were created, but neither permitted a deduction under section 23(e) (2). In Goodstein v. Commissioner of Internal Revenue, supra, the Court of Appeals for the First Circuit characterized the transaction as a bilateral contract (in contrast to the option theory) and intimated that the interest paid is an item of cost deductible in the year when the entire transaction is completed. The Court, however, did not reverse the Tax Court's conclusion that "there was no transaction entered into for profit within the meaning of Section 23(e) (2)." (267 F.2d at 132).

In Lewis v. Commissioner of Internal Revenue, supra, the Court of Appeals for the Seventh Circuit characterized the transaction as an option agreement within section 117(g) (2) but found that the endeavor was a sham for income tax purposes and denied a deduction because it "had no substance as a business trans-

action entered into for profit or for the production of income." (328 F.2d at 640). It admitted that a technically valid and enforceable option agreement had created legal relationships and, therefore, the entire transaction could not be characterized as a complete sham.

■ Proof of a valid option or bilateral contract agreement does not establish the deductibility of an expense. A transaction which creates legal rights and obligations may or may not be considered a sham for the purpose of determining the deductibility of expenses incurred in the transaction. Proof of a valid contract, however, does not meet the requirements imposed by the applicable statutory provisions. We find that this expense, even if it is characterized under section 117(g) (2) (or section 1234) as a *recognized* capital loss, is not *deductible* under section 165(c).

The taxpayers, both in *MacRae* and in *Becker*, were permitted to deduct their out-of-pocket expenses under section 117 (g) (2) as capital losses incurred when they failed to exercise their options. Plaintiff has not urged us to construe the instant transaction as either an option agreement or as a bilateral contract but concludes that either characterization yields a loss deduction under section 165 (c).

The 1954 Code re-enactment of section 117(g) (2) is section 1234. It provides for the recognition of capital gain or loss, under specific circumstances, if a taxpayer fails to exercise an option. The recognition of a loss, however, does not establish its deductibility. In the case of an individual, a recognized loss is deductible only if it is within the explicit limitations of section 165(c). See: Morris R. DeWoskin, 35 T.C. 356 (1960). The regulations under section 1234 make

---

"(e) Losses by Individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \*

"(2) If incurred in any transaction entered into for profit, though not connected with the trade or business;

\* \* \*."

this approach "crystal clear". Regulation section 1.1234–1(f) provides:

(f) Limitation on effect of section.

Losses to which section 1234 applies are subject to the limitations on losses under section 165(c) * * *.

Whether this transaction is characterized as an option contract or as a bilateral agreement (assuming that it is not a complete sham which would not be viable for either legal or income tax purposes), the ultimate question is whether this purported capital loss is deductible under section 165(c) (2). This issue was not decided in either *Becker* or *Goodstein,* although in *Becker* a deduction was permitted under section 117(g) (2) (the capital loss recognition provision) and the dicta in both *Goodstein* and *Lynch* indicate that they are in accord. In *MacRae,* the court also permitted a deduction under the recognition provision but specifically denied the availability of a capital loss deduction under section 23(e) (2) (present section 165(c) (2) and the only basis for a proper deduction). Even if this is a recognized loss, it is not deductible because we find that the transaction does not meet the statutory requirements of section 165(c) (2).[11]

In Knetsch v. United States, 348 F.2d 932, 172 Ct.Cl. 378 (1965), cert. denied, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966), a closely analogous case, we discussed the basic requirements for the deduction of a loss under section 165(c), i. e., a profit-seeking purpose for entering the transaction which gives rise to the loss. The taxpayer, when denied an interest deduction for "prepaid interest" by the Supreme Court (364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960)), returned to claim a section 165(c) capital loss or, alternatively, a section 212 business expense deduction for the out-of-pocket costs of an annuity contract transaction designed to create artificial interest deductions. We reaffirm our discussion in *Knetsch* of section 165(c). We find that, in this case, as in *Knetsch,* plaintiff cannot deduct this loss under section 165(c).

■ The realization and recognition of a loss does not establish the requisite profit-seeking purpose essential for a capital loss deduction by an individual under section 165(c). Plaintiff has not proved that purpose. "[S]ection 165(c) (2) was not designed to be a catch-all provision allowing taxpayers to deduct any out-of-pocket expenditures." (Knetsch v. United States, supra, 348 F.2d at 937, 172 Ct.Cl. at 385).

Our evaluation of the legal relationships created by the venture and of those objective facts which indicate whether a subjective profit motive existed when the transaction was begun, leads us to conclude that plaintiff did not have any profit motive other than (or in addition to) the tax benefit which would accrue. The Treasury bonds were purchased at 98⅜ without interest coupons. Plaintiff paid 2½ percent per annum interest on the loan which equaled the purchase price of the bonds. The bonds could reasonably be expected to increase by 1⅝ to their face value. No proof has been offered from which we might infer, or deduce that plaintiff had some reasonable expectation that the bonds would be saleable at a price sufficiently above their face value so as to result in a profit to plaintiff in excess of his expenditures incurred when the transaction was initiated. These circumstances convince us that plaintiff did not expect to recover the interest paid, much less to obtain a profit.

■ Plaintiff might have overcome these facts by adequate proof of a sub-

---

11. The Second Circuit may have modified its original position as stated in *Becker* by its decision in Jockmus v. United States, supra, wherein the court, in discussing the applicability of section 165(c) (2) noted:

"* * * [T]he taxpayers would * * * be required to show that the transaction was entered into for profit. * * * [335 F.2d at 30]."

See also: Goldstein v. Commissioner of Internal Revenue, supra; Benenson v. Commissioner of Internal Revenue, supra; and Lifschultz v. Commissioner of Internal Revenue, 2 Cir., 393 F.2d 232 (1968).

jective intention and expectation to profit from the transaction, but in the absence of any attempt to offer a modicum of proof plaintiff cannot recover. Accordingly, we deny a deduction under section 165(c) (2).

As we said in Knetsch v. United States, supra:

> * * * Thus taxpayers here are required to show that they intended, when they purchased their annuity contract, [or Treasury notes] to realize a profit through the increase in the cash value of the annuity contract [or notes] apart from the tax savings. [348 F.2d at 939, 172 Ct.Cl. at 388].

The absence of any economic substance was the underlying rationale for denying an interest or a business expense deduction in the Livingstone-type transaction. Those same factual circumstances have no more economic reality when the out-of-pocket expense is characterized as a capital loss, in the absence of proof that the entire transaction was entered into for profit. Plaintiffs therefore are not entitled to recover, and the petition is dismissed.