Sidney B. LIFSCHULTZ and Charlotte Lifschultz, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 307, Docket 31590.

United States Court of Appeals
Second Circuit.

Argued March 14, 1968.

Decided April 15, 1968.

Ind.App. 474, 48 N.E. 595 (1897). That question was not argued on *Shiels'* appeal.

M. James Spitzer, New York City (Spitzer & Feldman and Barry Mahoney, New York City, Dow, Lohnes & Albertson, Bernard J. Long and Bernard J. Long, Jr., Washington, D. C., on the brief), for petitioners.

Issie L. Jenkins, Attorney, Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Crombie J. D. Garrett, Attorneys, Dept. of Justice, on the brief), for respondent.

Before KAUFMAN and HAYS, Circuit Judges, and RYAN, District Judge.*

\* Of the District Court for the Southern District of New York, sitting by designation.

HAYS, Circuit Judge:

Sidney B. Lifschultz,[1] petitions this court for review of a decision of the Tax Court upholding the Commissioner's assessment of deficiencies in income tax payments for the years 1955 and 1956. We deny the petition and affirm the Tax Court.

The deficiencies in question result from the disallowance of certain deductions which taxpayer claims represent the payment of interest on loans. Respondent denies that the payments constituted interest within the meaning of Section 163(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 163(a).[2]

The facts are not in dispute.[3] On November 14, 1955, petitioner purchased from Millridge Corporation, a then recently organized securities dealer, $500,000 of 2⅞ percent United States Treasury bonds, giving Millridge his promissory note for the purchase price. The note bore interest at the rate of 3½% which petitioner prepaid. Millridge owned no bonds, and indeed had no assets. It arranged by a somewhat complex series of transactions to purchase bonds on the basis of its promissory note pledging the bonds as collateral. Neither Millridge nor the taxpayer actually received any bonds or had them under their control. On November 22, 1955 a similar transaction took place involving $250,000 in Treasury bonds. The bonds which were the subject of these two transactions were sold on September 25, 1956 and the various promissory notes were paid off with the proceeds of the sale. In April 1956 taxpayer and Millridge arranged a third transaction of which the subject was again $500,000 in 2⅞ percent Treasury bonds. Again taxpayer gave his note to Millridge. Without specifying the rate of interest the note recited that interest in a certain amount had been prepaid. It stated that the bonds had been deposited wih Millridge. Actually neither Millridge nor the taxpayer ever had possession of the bonds. They were held by Sartorius & Company as collateral for a loan to Millridge by means of which Millridge raised the money to purchase the bonds. These bonds were sold on January 7, 1957, the proceeds going toward payment of the promissory notes of taxpayer and Millridge. A fourth similar transaction related to Treasury bonds in the amount of $500,000 bearing 1½ percent interest. This time the taxpayer prepaid interest on his promissory note at the rate of 5%. These bonds which were held by First National City Bank for the account of National Security Bank of Chicago as collateral for National Security's loan of the purchase price were sold on May 2, 1957. A fifth transaction which was consummated about December 13, 1956 had to do with the purchase of $1,000,000 of 1⅞ percent Treasury bonds. Taxpayer executed a promissory note to First Seneca Bank and Trust Company of Oil City, Pennsylvania, for a loan to cover the purchase price of the bonds. The note bore interest at 5% and the interest was prepaid. These bonds were sold on November 25, 1957 and the promissory note was paid.

In his tax return for 1955 and 1956 taxpayer deducted the amounts of his payments for "prepaid interest" on each of the five transactions.

The taxpayer's net cash losses on the five transactions in question amounted,

---

1. Charlotte Lifschultz, the wife of Sidney B. Lifschultz, is joined as a party because the couple filed joint returns. In this opinion Sidney B. Lifschultz is referred to as the taxpayer.

2. Sec. 163. Interest.
    (a) General Rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

3. The facts are set forth in full in the opinion of the Tax Court which is unofficially reported at 25 CCH Tax Ct.Mem. 1146 (1966).

apart from the possibility of tax advantages, to:

| | |
|---|---|
| Transaction 1 | $7,789.04 |
| Transaction 2 | 3,939.03 |
| Transaction 3 | 7,833.48 |
| Transaction 4 | 4,791.65 |
| Transaction 5 | 3,501.46 |

If the deductions for interest were allowable taxpayer would as a result of the five transactions decrease the amount of his income tax by $30,710.88 for 1955 and by $65,454.57 for 1956.

The Tax Court found that the first three of the five transactions were "sham" and that the so-called "interest" payments with respect to the remaining two transactions were also not deductible because though the transactions were not sham they were not entered into with the purpose of making a profit. See Goldstein v. Commissioner of Internal Revenue, 364 F.2d 734 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967).

 We find it unnecessary to decide whether any or all of the five transactions were sham since we are persuaded that all were entered into "without any realistic expectation of economic profit and 'solely' in order to secure * * * interest deduction[s]" Goldstein v. Commissioner of Internal Revenue, supra, 364 F.2d at 740.

In the Goldstein case we held, citing Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960), that where transactions similar to those involved in the present case, though they could not be characterized as "sham," "had no substance, utility, or purpose beyond the tax deduction," the controverted payments did not constitute interest within the meaning of Section 163(a) and were not deductible. Goldstein v. Commissioner of Internal Revenue, supra, 364 F.2d at 742.

Taxpayer testified that his purpose in entering into the questioned transactions was to make a profit. The Tax Court was permitted to discredit this self-serving testimony and we are bound by its finding in that respect. Commis-

sioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Moreover, even if the various transactions *had* resulted in a profit, deductibility for interest could still have been denied. Rubin v. United States, 304 F.2d 766 (7th Cir.1962).

Comparison between the interest rates on the bonds purchased and on the money borrowed to finance the purchases demonstrates the certainty of an initial loss whch could be turned into a profit only by appreciation in the price of the bonds themselves. But the possibility of any considerable fluctuation in United States Treasury obligations as close to maturity as were these purchased bonds is remote indeed. Moreover, as the respondent points out, if taxpayer had been seeking economic gain, he could have held the bonds involved in the first three transactions for brief additional periods until they had risen to par at maturity. The fact that he did not do so indicates that his motive was not to realize a profit but to secure a tax deduction.

The decision of the Tax Court is affirmed.