T.C. Memo. 1995-597

UNITED STATES TAX COURT

CHONG-KAK AND SANG-OK LEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

HAMALEE DISTRIBUTORS INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4498-94, 4503-94. Filed December 19, 1995.

<u>Tysun Ihm</u>, for petitioners.

<u>Aretha Jones</u> and <u>Clement Shugerman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>: Chong-Kak and Sang-Ok Lee, and Hamalee
Distributors, Inc., separately petitioned the Court to
redetermine respondent's determinations of the following Federal
income tax deficiencies and additions thereto:

## The Lees, docket No. 4498-94

| Year | Deficiency | Sec. 6653(b)(1) | Additions to Tax | | | |
| | | | Sec. 6653(b)(2) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
|---|---|---|---|---|---|---|
| 1985 | $113,035 | $56,518 | [1] | --- | --- | $28,259 |
| 1986 | 195,770 | --- | --- | $146,828 | [2] | 48,943 |
| 1987 | 182,440 | --- | --- | 136,830 | [3] | 45,610 |
| 1988 | 155,509 | 116,632 | --- | --- | --- | 38,877 |

[1]50% of the interest due on $113,035.
[2]50% of the interest due on $195,770.
[3]50% of the interest due on $182,440.

## Hamalee, docket No. 4503-94

| Taxable Year Ended | Deficiency | Sec. 6653(b)(1) | Additions to Tax | | | |
| | | | Sec. 6653(b)(2) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
|---|---|---|---|---|---|---|
| 3/31/86 | $245,998 | $122,999 | [1] | --- | --- | $61,499 |
| 3/31/87 | 253,945 | --- | --- | $190,459 | [2] | 63,486 |

[1]50% of the interest due on $245,998.
[2]50% of the interest due on $253,945.

Following the consolidation of their cases for trial, briefing, and opinion, we must decide:

1. Whether Hamalee underreported its taxable income for its taxable years ended March 31, 1986 (1985 taxable year), March 31, 1987 (1986 taxable year), December 31, 1987 (1987 taxable year), and December 31, 1988 (1988 taxable year). We hold it did.

2. Whether Mr. Lee received unreported distributions from Hamalee during 1985, 1986, and 1987. We hold he did.

3. Whether Hamalee may deduct certain unreported expenses that it allegedly paid in cash. We hold it may not.

4. Whether Hamalee had a net operating loss (NOL) in 1989, that the Lees may carry back to the subject years. We hold it did not.[1]

5. Whether petitioners are liable for the additions to tax for fraud determined by respondent. We hold they are to the extent stated herein.

6. Whether petitioners are liable for the additions to tax for substantial understatements determined by respondent. We hold they are.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. We separately refer to Chong-Kak and Sang-Ok Lee as Mr. Lee and Mrs. Lee, respectively. We collectively refer to Mr. Lee and Mrs. Lee as the Lees. We refer to the Lees' daughter, Inae Lee, as Ms. Lee. We refer to the Lees' son-in-law, Ick Soo Won, as Mr. Won. We refer to Hamalee Distributors, Inc., as Hamalee. We refer to Myun Suk Chong as Ms. Chong.

### FINDINGS OF FACT

---

[1] Our resolution of this issue moots another issue raised by the parties as to Mr. Lee's basis in his Hamalee stock on Dec. 31, 1989.

Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference.

The Lees are husband and wife. They resided in Elmhurst, New York, when they petitioned the Court. They filed joint Federal income tax returns for the years in issue. Hamalee is Mr. Lee's wholly-owned corporation. Hamalee was formed by Mr. Lee in 1982 under the corporate laws of the State of New York, and it became an S corporation as of June 1, 1987. Hamalee's mailing address was in Elmhurst, New York, at the time of its petition.

The Lees immigrated to the United States from South Korea in 1980. While in Korea, Mr. Lee received a college degree in economics, and Mrs. Lee completed some college courses. Mr. Lee managed one company while in Korea, and he owned and operated a second company there for 12 years. When the second company terminated in 1979, its gross sales were approximately $500,000, and it employed approximately 300 people. Mrs. Lee worked with Mr. Lee at the second company before it terminated.

Hamalee was a wholesale supplier of beer in the Long Island area of New York. The Lees were its only officers; Mr. Lee served as its president, and Mrs. Lee served as its secretary.

Mr. Lee managed Hamalee's warehouse operation, reviewed its accounting records and receipts, monitored its purchase and sales orders, collected its receivables, effectuated its banking transactions, and signed all of Hamalee's tax returns. Mrs. Lee dealt with Hamalee's customers, took its sales orders, checked its deliveries, collected and accounted for moneys received by its delivery people, and helped manage its financial records. Mrs. Lee and Ms. Chong maintained Hamalee's accounting records and receipts. Mr. Lee and Mrs. Lee were the only individuals authorized to sign checks for Hamalee.

Hamalee's purchases, sales, and payables were primarily transacted in cash. Hamalee kept its business records in two separate sets of books. The first set (the actual books) contained all of Hamalee's sales, listing each sale in chronological order and referencing whether each sale was paid in cash or by check. The second set (the tax books) showed all of Hamalee's sales that were paid by check and some of the sales that were paid in cash. Entries in the tax books, which were the only books provided to the preparers of Hamalee's tax returns, were the only sales reported for tax purposes. Entries in the tax books were underlined in red ink in the actual books, and an invoice number was handwritten in the actual books next to each

underlined entry.  The invoices that corresponded to the invoice numbers were "Bates-stamped" and stored in sequential order.  The invoices for the cash sales that were recorded in only the actual books were not Bates-stamped.  Ms. Chong destroyed most of these invoices after she recorded them in the actual books.

On October 13, 1989, the New York City Department of Finance (the Finance Department) began an undercover investigation of petitioners after an informant notified them that petitioners were evading Federal and State income taxes through the filing of fraudulent tax returns.  Shortly thereafter, during the course of the Lees' efforts to sell Hamalee's business, Mrs. Lee and Ms. Lee were introduced to two undercover agents from the Finance Department posing as prospective buyers.[2]  Mrs. Lee showed the agents Hamalee's actual books, and she explained to the agents that Hamalee had a different set of books for tax purposes.  Mrs. Lee explained to the agents that the actual books included sales that were not recorded in the tax books.

In connection with the Finance Department's undercover operation, the authorities "raided" Hamalee on October 25, 1989, seizing most of Hamalee's business records and the Lees' personal

---

[2] Ms. Lee was there primarily as an interpreter.

bank records.  The Lees and Ms. Lee were arrested, and a resulting seventy-six count grand jury indictment was filed in the New York County Supreme Court against them and Hamalee with respect to the period April 1, 1985 through December 31, 1989. Pursuant to a Plea Agreement dated September 11, 1990, the Lees and Hamalee (through its president, Mr. Lee) pleaded guilty to a felony charge of evading New York City corporate tax for Hamalee's 1988 taxable year.  Mr. Lee, both individually and on behalf of Hamalee, also pleaded guilty to a felony charge of filing a false and fraudulent New York State franchise tax return for Hamalee's 1986 taxable year.  Hamalee was ordered to pay $125,000 in restitution of New York State and City taxes, Mr. Lee was given a 1 year custodial sentence, and Mrs. Lee was given a non-custodial sentence.

Respondent audited petitioners for the subject years.  She referred to Hamalee's actual books and determined that Hamalee failed to report sales of $4,812,404, $4,623,455, $3,229,199, and $4,589,694 for its 1985 through 1988 taxable years, respectively.[3]  She referred to industry standards and determined

_____

[3] Respondent also determined that Hamalee had unreported purchases in each year.  These additional purchases are not at issue here.

that Hamalee's gross profit percentage for each year was 12 percent. Respondent determined that Hamalee constructively distributed its unreported sales income to Mr. Lee during his 1985, 1986, and 1987 taxable years.[4] Of the $577,488 in unreported income for Hamalee's 1985 taxable year ($4,812,404 x 12%), respondent determined that $433,116 was distributed to Mr. Lee in 1985, and $144,372 was distributed to him in 1986. Of the $554,815 in unreported income for Hamalee's 1986 taxable year ($4,623,455 x 12%), respondent determined that $416,111 was distributed to Mr. Lee in 1986, and $138,704 was distributed to him in 1987. With respect to all of these distributions, respondent determined that Mr. Lee received: (1) A dividend of $269,407 and a return of capital of $163,709 in 1985; (2) a dividend of $349,960, a return of capital of $86,291, and a capital gain of $124,232 in 1986; and (3) a dividend of $86,719 and a capital gain of $51,985 in 1987. For Hamalee's 1987 and 1988 taxable years, respondent determined that the unreported income of $387,504 ($3,229,199 x 12%) and $550,763 ($4,589,694 x 12%) was taxable to Mr. Lee as income from an S corporation.

---

[4] Respondent determined that all of these distributions occurred when Hamalee was a C corporation.

OPINION

Except for respondent's allegations of fraud, petitioners must prove that respondent's determinations set forth in her notices of deficiency are incorrect.[5]  Rule 142(a) and (b); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Petitioners must also prove their entitlement to any deduction.  <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  Deductions are matters of legislative grace, and petitioners must show that their deductions are allowed by the Code.  Petitioners must also keep sufficient records to substantiate any deduction that would otherwise be allowed by the Code.  Sec. 6001.

1.  <u>Profit on Sales</u>

Petitioners do not dispute that Hamalee failed to report the sales set forth in the notices of deficiency.  The dispute rests on the calculation of Hamalee's gross profit percentage

---

[5] Petitioners allege in their brief that respondent must prove her determination of constructive distributions because this determination is arbitrary and capricious.  We refuse to consider this allegation because petitioners raised it for the first time on brief.  If petitioners had wanted to place this allegation before us, they should have made the allegation in their petition or taken other steps to preserve it.  By failing to do so, petitioners have conceded it.  See, e.g., <u>Merlino v. Commissioner</u>, T.C. Memo. 1993-200, and the cases cited therein; see also Rule 34(b)(4) and (5).

attributable to these sales. At trial, respondent supported her determination with the testimony of two experts who concluded that Hamalee's gross profit percentage could be as high as 24.9 percent. In reaching their conclusions, respondent's experts considered various factors (e.g., economic, investment market, and industry conditions) related to the selling of beer during the relevant time frame. Respondent's experts also reviewed Hamalee's sales and purchases journals, as well as its tax returns, and referred to several relevant financial publications. Petitioners argue that Hamalee's gross profit percentages were 9.7568 percent, 8.9763 percent, 7.9707 percent, and 7.612 percent for its 1985 through 1988 taxable years, respectively. At trial, petitioners presented an "expert" to attempt to disprove respondent's determination and to support their claim to the lower gross profit percentages. Petitioners' "expert", Stan Lee, concluded that Hamalee's gross profit percentages equalled the percentages claimed by petitioners. In reaching his conclusions, Stan Lee reviewed some of Hamalee's purchases and sales documents, and he assumed that this sample was representative of all of Hamalee's purchases and sales documents. Stan Lee did not

review all of Hamalee's purchases and sales documents, and he did not consider any extrinsic evidence.

We agree with respondent's determination of Hamalee's gross profit percentages. We found her experts to be credible, and we found their presentations to be methodical, empirical, and persuasive. Respondent's lead expert, the president of a valuation company headquartered in New York, New York, has given expert testimony on fair market valuation and financial analysis for over 30 years in this and other Courts. He is a graduate of Princeton University, Phi Beta Kappa (junior year), Magna Cum Laude, and Lyman Biddle Senior Scholar. He has authored numerous books and articles, and he is a member of numerous professional associations, many of which he has chaired. In addition to the weight that we give the testimony of respondent's experts, we also find relevant the fact that respondent conservatively determined Hamalee's gross profit percentage at 12 percent for each year, although her experts testified that the percentages could be as high as 24.9 percent.

Petitioners argue that respondent's determination is erroneous because it is based on industry standards rather than the "better data" of Hamalee's actual purchases and sales.

Petitioners argue that Stan Lee used this "better data" and computed Hamalee's gross profit percentages at the amounts that petitioners ask us to find. We are unpersuaded. In addition to the fact that petitioners have failed to convince us that respondent's method of computation was less accurate than petitioners' "better method", we bear in mind that Hamalee's cash sales accounted for a large portion of its total sales and that most of Hamalee's cash sale invoices were destroyed. Thus, even if we were to agree with petitioners that the use of Hamalee's actual data was the better method for computing its gross profit percentages, we could not have applied the "better method" in the case at hand because the record contains insufficient data.

We also were not impressed with the presentation of Stan Lee, and we view most of his conclusions to be unpersuasive. His testimony and report lacked coherence, and they were not helpful to the Court. His conclusions were partially based on Hamalee's sales invoices, which did not include the ones that were destroyed, and he reviewed only a fraction of the already incomplete records to arrive at his conclusions. We need not follow an expert's conclusions that are contrary to our better judgment, see, e.g., Helvering v. National Grocery Co., 304 U.S.

282, 294-295 (1938); <u>Seagate Technology v. Commissioner</u>, 102 T.C. 149, 186 (1994), and we refuse to follow Stan Lee's conclusions here. We sustain respondent's determination that Hamalee's gross profit percentage is 12 percent for each relevant year, and that Hamalee has unreported sales income of $577,488 for its 1985 taxable year, $554,815 for its 1986 taxable year, $387,504 for its 1987 taxable year, and $550,763 for its 1988 taxable year. Because Hamalee is an S Corporation for its 1987 and 1988 taxable years, we also sustain respondent's determination that Hamalee's income for those years is includable in the Lees' 1987 and 1988 taxable incomes.

## 2. <u>Constructive Distributions</u>

A distribution may constructively arise when corporate funds are diverted to a shareholder's personal use; e.g., to pay a shareholder's personal expense or to discharge his or her personal obligation. A constructive distribution may arise even when the distributing corporation does not formally declare that it is making a distribution. <u>Crosby v. United States</u>, 496 F.2d 1384, 1388 (5th Cir. 1974); <u>Tollefsen v. Commissioner</u>, 431 F.2d 511 (2d Cir. 1970), affg. 52 T.C. 671 (1969); <u>Dean v. Commissioner</u>, 57 T.C. 32 (1971); <u>Challenge Manufacturing Co. v. Commissioner</u>, 37 T.C. 650 (1962). When a constructive

distribution arises, the amount (if any) of the distribution that is taxable to the recipient shareholder is determined by reference to section 301(c).  Section 301(c)(1) provides that the amount of the distribution that is a dividend is included in gross income.  Section 301(c)(2) provides that the amount of the distribution that is not a dividend reduces the adjusted basis of the related stock.  Section 301(c)(3)(A) generally provides that the amount of the distribution that is not a dividend, and that exceeds the adjusted basis of the related stock, is gain from the sale or exchange of property.

Petitioners argue that respondent's determination of the constructive distributions is erroneous because the Lees did not receive the subject distributions.  In support of petitioners' argument, the Lees, a number of their relatives, and Ms. Chong testified:  (1) The Lees did not receive any distributions from Hamalee during the relevant years, and (2) most of the unreported income was attributable to moneys and/or inventory stolen from Hamalee by Mr. Won and his brother.  With respect to petitioners' latter contention, their witnesses generally testified that the Lees learned in 1989 that Mr. Won and his brother had been stealing money and/or inventory from Hamalee since 1986.  To attempt to support this testimony, petitioners presented some

documents showing that the Lees hired a law firm allegedly to recover Hamalee's stolen property, and that the firm sent a letter to both Mr. Won and his brother in May 1990, asking them to compensate Hamalee for the thefts or face criminal prosecution if they did not.  When the letters received no response, the witnesses testified, no further action was taken to recover the allegedly stolen amounts.

We are not persuaded by petitioners' arguments.  Simply put, they have failed to show us that the Lees did not actually or constructively receive these distributions.  Petitioners rely mainly on the testimony of the Lees and numerous "family" members to support their allegations for a contrary result.  We give this testimony little weight.  In addition to the fact that much of it is self-serving and/or biased, we find that none of the relevant testimony is corroborated by uninterested persons or any other reliable evidence.  Under the circumstances, we are not required to, and we do not, rely on that testimony to support petitioners' positions herein.  LaBow v. Commissioner, 763 F.2d 125, 131 (2d Cir. 1985), affg. in part and revg. in part on other grounds T.C. Memo. 1983-417; Lifschultz v. Commissioner, 393 F.2d 232, 234 (2d Cir. 1968), affg. T.C. Memo. 1966-225; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioners also rely on the fact that the Lees hired a law firm allegedly to recover the stolen funds. We give this fact little weight. The law firm merely mailed demand letters to Mr. Won and his brother, and neither the firm nor the Lees took any meaningful steps, after these letters were mailed, to recover the amounts claimed stolen. The Lees, for example, could have (but did not) seek criminal charges against Mr. Won or his brother with respect to the alleged theft. The Lees also could have (but did not) make a claim on Hamalee's then-existing insurance policy. While we can understand the delicate and difficult familial situation that the Lees may have faced with regard to criminally prosecuting their daughter's husband with respect to this purported matter, we cannot excuse the lack of evidentiary support for the claimed thefts. Petitioners have not convinced us that these "thefts" occurred.

Because petitioners have failed to disprove respondent's determination on this issue, we sustain it.

3. Unreported Cash Expenditures

Petitioners argue that Hamalee may deduct certain cash expenditures that were made in each year in issue, but for which Hamalee did not claim a deduction on its corresponding tax returns. Petitioners allege that these cash expenditures were

payments for: (1) Wages of temporary employees, (2) meals provided to Hamalee's employees on its premises, and (3) fuel and tolls. Petitioners generally rely on the testimony of Ms. Chong to support their allegations of these unreported expenditures and the amounts thereof. Hamalee has no records to support these purported expenditures, and petitioners ask the Court to estimate the expenditures' dollar amounts.

We decline petitioners' invitation to estimate the amount of Hamalee's claimed expenditures. Although petitioners are correct in that we may estimate the amount of unsubstantiated expenses when we have a basis to do so, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we do not have a sufficient basis to make an estimate here. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In fact, the record does not even persuade us that Hamalee incurred the claimed expenditures, or, if it had, that these expenditures were ordinary and necessary business expenses under section 162. Whereas petitioners would have us find, based solely on the testimony of Ms. Chong, that Hamalee incurred the purported expenditures in the amounts that she so claimed, we refuse to do so. Ms. Chong's testimony on this issue is unsupported by the record, and we find it to be somewhat incredible. We will not rely on it. LaBow v. Commissioner,

supra at 131; <u>Lifschultz v. Commissioner</u>, <u>supra</u> at 234; <u>Tokarski v. Commissioner</u>, <u>supra</u> at 77.  Because petitioners have not proven that Hamalee incurred any unreported expenditures that were deductible under section 162, and because the record contains no reliable evidence upon which we could have otherwise estimated the amounts of these expenditures, had we found them to have been incurred, we hold that Hamalee is not entitled to any additional deductions.

4.  <u>Net Operating Loss Carryback</u>

Petitioners argue that Hamalee has an NOL in 1989, and that the Lees may carry it back to the subject years.  Petitioners allege that the NOL stems from:  (1) The thefts mentioned above and (2) cash expenditures made by Hamalee in 1989, but for which it did not claim a deduction on its 1989 tax return.  The cash expenditures are generally asserted to be of the same type as the cash expenditures mentioned above.

Petitioners must prove their right to deduct an NOL in the subject years.  <u>United States v. Olympic Radio & Television, Inc.</u>, 349 U.S. 232, 235 (1955).  Such a deduction is a matter of legislative grace; it is not a matter of right.  <u>Id.</u> at 235; <u>Deputy v du Pont</u>, 308 U.S. 488, 493 (1940).

We have previously indicated that Hamalee is not entitled to deduct a theft loss in 1989, and we see no purpose that would be served by repeating our discussion here.  We hold that Hamalee has not substantiated the claimed theft loss in 1989.  The same is true with respect to the claimed cash expenditures.  Suffice it to say, once again, that petitioners have not proven that Hamalee is entitled to any of them.  We hold that the Lees may not carryback any of the purported 1989 NOL.

5.  Additions to Tax For Fraud

Turning to respondent's allegations of fraud, respondent must meet her burden of proving fraud through affirmative evidence because fraud is never imputed or presumed.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case.  DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  Respondent must prove both prongs of the often-cited two-prong test for fraud (i.e., whether petitioners underpaid tax in the relevant year, and whether some part of the underpayment was due to fraud), in order to sustain her allegations under:  (1) Section 6653(b)(1) for petitioners'

1985 taxable years,[6] (2) section 6653(b)(1)(A) for petitioners'
1986 taxable years and the Lees' 1987 taxable year,[7] and

---

[6] Sec. 325(a) of the Tax Equity and Fiscal Responsibility
Act of 1982, Pub. L. 97-248, 96 Stat. 616-617, amended sec.
6653(b) effective for taxes the last day prescribed by law for
the payment of which, without regard to extensions, was after
Sept. 3, 1982.  Following its amendment, sec. 6653(b) provides in
relevant part:

    (1)  In General.--If any part of any underpayment * * *
    of tax required to be shown on a return is due to fraud,
    there shall be added to the tax an amount equal to 50
    percent of the underpayment.

    (2)  Additional Amount for Portion Attributable to
    Fraud.--There shall be added to the tax (in addition to the
    amount determined under paragraph (1)) an amount equal to
    50 percent of the interest payable under section 6601--

        (A) with respect to the portion of the
        underpayment described in paragraph (1) which is
        attributable to fraud, and

        (B) for the period beginning on the last day
        prescribed by law for payment of such underpayment
        (determined without regard to any extension) and ending
        on the date of the assessment of the tax (or, if
        earlier, the date of the payment of the tax).

[7] Sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-
514, 100 Stat. 2085, 2742-2743, amended sec. 6653(b) effective
for returns the due date of which, without regard to extensions,
was after Dec. 31, 1986.  Following its amendment, sec. 6653(b)
provides in relevant part:

    (1)  In general.--If any part of any underpayment * * *
    of tax required to be shown on a return is due to fraud,
    there shall be added to the tax an amount equal to the sum
    of--

(continued...)

(3) section 6653(b)(1) for the Lees' 1988 taxable year.[8]  For

purposes of section 6653(b)(2), which is applicable to

---

[7](...continued)
          (A) 75 percent of the portion of the underpayment
      which is attributable to fraud, and

          (B) an amount equal to 50 percent of the interest
      payable under section 6601 with respect to such portion
      for the period beginning on the last day prescribed by
      law for payment of such underpayment (determined
      without regard to any extension) and ending on the date
      of the assessment of the tax or, if earlier, the date
      of the payment of the tax.

      (2)  Determination of portion attributable to fraud.--
If the Secretary establishes that any portion of an
underpayment is attributable to fraud, the entire
underpayment shall be treated as attributable to fraud,
except with respect to any portion of the underpayment which
the taxpayer establishes is not attributable to fraud.

[8] Sec. 1015(b)(2)(B) of the Technical and Miscellaneous
Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3569,
amended sec. 6653(b) effective for returns the due date of which,
without regard to extensions, was after Dec. 31, 1988.  Following
its amendment, sec. 6653(b) provides in relevant part:

      (1)  In general.--If any part of any underpayment * * *
of tax required to be shown on a return is due to fraud,
there shall be added to the tax an amount equal to 75
percent of the portion of the underpayment which is
attributable to fraud.

      (2)  Determination of portion attributable to
fraud.--If the Secretary establishes that any portion
of an underpayment is attributable to fraud, the entire
underpayment shall be treated as attributable to fraud,
except with respect to any portion of the underpayment
which the taxpayer establishes is not attributable to
fraud.

petitioners' 1985 taxable years, respondent must prove the portion of the deficiency that is attributable to fraud.  Cooney v. Commissioner, T.C. Memo. 1994-50; Franklin v. Commissioner, T.C. Memo. 1993-184.  For purposes of section 6653(b)(1)(B) (which is applicable to petitioners' 1986 taxable years and the Lees' 1987 taxable year) and section 6653(b)(1) (which is applicable to the Lees' 1988 taxable year), when respondent shows that some part of the underpayment is due to fraud, the whole underpayment is treated as attributable to fraud unless the taxpayer proves otherwise.

a.  Underpayments

Based on our careful review of the record, we find that respondent has clearly and convincingly proven that Hamalee underpaid its taxes for its 1985 and 1986 taxable years, and that the Lees underpaid their taxes for 1987 and 1988.  See sec. 6653(c)(1) (an "underpayment" generally is the same as a "deficiency" under sec. 6211).  The record clearly convinces us that Hamalee had significant amounts of income that were not reported on its 1985 and 1986 tax returns, and that the Lees had significant amounts of income that were not reported on their 1987 and 1988 tax returns.  The record also clearly convinces us that these amounts were subject to tax.  Thus, with respect to

Hamalee's 1985 and 1986 taxable years, and the Lees' 1987 and 1988 taxable years, we hold that respondent has met her burden on the first prong of the two-prong test for fraud.

In the case of the Lees' 1985 and 1986 taxable years, however, the answer is not so clear. Respondent determined a deficiency in each of those years based on her determination that Mr. Lee received constructive distributions from Hamalee equal to the unreported income. As set forth above, we sustained those determinations because petitioners did not disprove them. The mere fact that we have sustained a deficiency determined by respondent, however, does not mean that an individual has underpaid his or her taxes for purposes of the additions to tax for fraud. DiLeo v. Commissioner, supra ("clear and convincing" standard applies to both prongs of the two-prong test); Parks v. Commissioner, 94 T.C. 654, 663-664 (1990); Hebrank v. Commissioner, 81 T.C. 640 (1983); see also Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982), and the cases cited therein. As the Court observed in Parks v. Commissioner, supra at 660-661:

> Where, as here, respondent has prevailed on the issue of the existence of a deficiency by virtue of a taxpayer's failure to carry his burden of proof, respondent cannot rely on that failure to sustain his burden of proving fraud. We must be careful in such

cases not to bootstrap a finding of fraud upon a
taxpayer's failure to prove respondent's deficiency
determination erroneous.  * * * [Citations omitted.]

With this well-settled law in mind, we are not clearly
convinced that the Lees actually or constructively received the
distributions from Hamalee determined by respondent.  Whereas
petitioners presented little evidence to show that Mr. Lee failed
to receive these distributions, respondent presented practically
no evidence at all to show that he did receive them.  We hold for
petitioners on this issue; respondent has failed to meet her
burden of proof.[9]  See also Drieborg v. Commissioner, 225 F.2d
216, 219-220 (6th Cir. 1955), affg. in part and revg. in part a
Memorandum Opinion of this Court (where fraud is determined for
each of several years, respondent's burden applies separately to
each of the years); Estate of Stein v. Commissioner, 25 T.C. 940,
959-963 (1956), affd. sub nom. Levine v. Commissioner, 250 F.2d
798 (2d Cir. 1958).  Thus, the Lees are not liable for the 1985
and 1986 additions to tax for fraud determined by respondent.

---

[9] Our holding on this issue is not inconsistent with our
prior holding that included the distributions in the Lees' 1985
and 1986 taxable income.  Our first holding is based on the fact
that petitioners failed to prove by a preponderance of the
evidence that the Lees did not receive the subject distributions.
Our second holding is based on the fact that respondent has not
proven by clear and convincing evidence that they did.

b.  Fraudulent Intent

For Hamalee's 1985 and 1986 taxable years, and the Lees' 1987 and 1988 taxable years, we turn to the second prong of the two-prong test.  The existence of fraud is a question of fact. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Fraud is never presumed or imputed; it must be established by independent evidence that establishes a fraudulent intent on the taxpayer's part.  Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).  Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences may be drawn from the relevant facts.  Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). An intent to conceal or mislead may be inferred from a pattern of conduct, Spies v. United States, supra at 499, or from a taxpayer's entire course of conduct, Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).  A pattern showing a consistent underreporting of income, when accompanied by other facts evidencing an intent to conceal, also justifies an inference of fraud.  Holland v. United States, 348 U.S. 121, 137 (1954); Parks v. Commissioner, supra; Otsuki v. Commissioner, supra at

664.  Certain indicia of fraud help us decide the existence of fraud; the presence of several indicia may be persuasive circumstantial evidence of fraud.  These "badges of fraud" include:  (1) The filing of false documents; (2) understatement of income; (3) maintenance of inadequate records; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) engaging in an illegal activity; (8) attempting to conceal the illegal activity; and (9) dealing in cash.  Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Based on our careful review of the record, we conclude that respondent has clearly and convincingly proven the requisite fraudulent intent in each of petitioners' relevant years. Petitioners' clear pattern of intentional underreporting of taxable income, coupled with their two sets of books and lack of recordkeeping, leads to a particularly strong inference of fraud. We also consider it significant that the Lees and Hamalee (through Mr. Lee) pleaded guilty to State income tax violations. Although this conviction does not, in and of itself, establish a fraudulent intent, we consider the crime evidence of a propensity

to defraud.  McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); Petzoldt v. Commissioner, supra at 701-702.

We also find that most of the badges of fraud are present.[10] Petitioners' income was consistently underreported, and, in toto, Hamalee did not report more than $17 million in sales.  Hamalee kept separate tax books, and those books did not list all of Hamalee's sales.  Most of Hamalee's cash invoices were destroyed by its bookkeeper.  Petitioners' tax returns, as filed, did not accurately report their taxable income as it was known to be. Petitioners maintained at least 11 bank accounts.  The Lees, individually and as officers of Hamalee, admitted guilt to evading State income tax laws.  Petitioners attempted to conceal Hamalee's unreported funds through the use of separate books. Hamalee's business was "cash oriented".[11]  Although petitioners

---

[10] Indeed, the only badge of fraud that may not be present concerns a taxpayer's cooperation with taxing authorities.  The record shows neither that the Lees (individually, or on behalf of Hamalee) cooperated with the taxing authorities, nor that they failed to do so.

[11] Indeed, Mrs. Lee testified that she usually kept a large amount of money at the warehouse, and that Mr. Lee sometimes found it necessary to carry a gun because he carried so much cash.  Ms. Chong also testified that Hamalee typically paid their bills in cash.

called several witnesses to try to explain Hamalee's separate books, the witnesses' implausible and inconsistent explanations leave us with the firm belief that the sole reason for the dual books was to hide income from the Government.[12] To restate what was stated by the Court of Appeals for the Second Circuit in a setting of fraud, "We look at the record as a whole which has a constant drum beat of fraud to which our ears are not deaf." Geller v. Commissioner, 556 F.2d 687, 691 (1977), affg. T.C. Memo. 1976-257.

For the foregoing reasons, we hold that: (1) Hamalee is liable for the additions to its 1985 and 1986 taxes determined by respondent under section 6653(b)(1) and section 6653(b)(1)(A), respectively, and (2) the Lees are liable for the additions to their 1987 and 1988 taxes determined by respondent under section 6653(b)(1)(A) and section 6653(b)(1), respectively. In so holding, we have considered all arguments made by the parties and, to the extent not addressed above, have found them to be without merit.[13]

_____

[12] Mrs. Lee, for example, gave at least five different answers to the question of why Hamalee had two sets of books, and why its tax preparers were only given one of those sets.

[13] In particular, petitioners cite Kiyono v. Commissioner, a
(continued...)

c.  Time-Sensitive Additions to Tax

Respondent also determined additions to Hamalee's 1985 and 1986 taxes under section 6653(b)(2) and section 6653(b)(1)(B), respectively, and additions to the Lees' 1987 tax under section 6653(b)(1)(B).  In accordance with our discussion above, we find that:  (1) The entire amount of Hamalee's 1985 and 1986 underpayments was due to fraud, and (2) the entire amount of the Lees' 1987 underpayment was due to fraud.  We so hold.

6.  Additions to Tax for Substantial Understatement

Additions to tax for substantial understatement of income tax equal 25 percent of the amount attributable to the substantial understatement.  Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988).  An understatement is substantial if it exceeds the greater of 10 percent of the tax

[13](...continued)
Memorandum Opinion of this Court, dated Oct. 17, 1949, and allege that the Lees had a limited knowledge of the English language that hindered their ability to understand the tax practices of the United States, and, thus, they are not liable for fraud.  We disagree.  Although we acknowledge the similarity in these cases on the narrow point of unfamiliarity of business customs, the evidence adduced at trial, especially undercover transcripts and the tax books that omitted large amounts of income, leads us to conclude that the Lees were not as unfamiliar as they claim. While this Court can understand the difficulties presented to those who do not speak the English language, this fact, standing alone, does not offset the overwhelming indicia of fraud against the Lees and Hamalee.

required to be shown on the return or $5,000 ($10,000 in the case of a corporation other than an S corporation).  Sec. 6661(b)(1). An understatement is reduced to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return.  Sec. 6661(b)(2).

Petitioners did not adequately disclose the amounts leading to the understatements on their returns.  They also have not cited any relevant authority to support any part of the understatements.  We sustain respondent's determinations on this issue.

To reflect the foregoing,

Decisions will be entered under Rule 155.