T.C. Memo. 1997-172

UNITED STATES TAX COURT

DWIGHT E. AND LESLIE E. LEE, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8043-84, 43467-85,          Filed April 7, 1997.
          32625-88.

Thomas R. Moore, for petitioner.

Wilton A. Baker, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  These consolidated cases were assigned to
Chief Special Trial Judge Peter J. Panuthos pursuant to the
provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[1]

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the tax years.  All Rule
                                        (continued...)

The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1976 through 1980 as follows:

| Docket No. | Year | Deficiency |
|------------|------|------------|
| 8043-84 | 1978 | $26,811.00 |
| 43467-85 | 1977 | 33,278.26 |
| 32625-88 | 1976 | 133.00 |
| | 1979 | 4,046.00 |
| | 1980 | 622.00 |

These cases were submitted by the parties fully stipulated. The three dockets have a long history which we will briefly review. One of the issues in all three dockets relates to petitioners' participation in transactions with Futures Trading, Inc. ((FTI)/Merit Securities, Inc. (Merit)). In four consolidated cases, Seykota v. Commissioner, T.C. Memo. 1991-234, supplemented by T.C. Memo. 1991-541, we addressed issues concerning the various FTI/Merit transactions. Petitioners were not parties to those cases. The decisions in those cases are final.

On January 11, 1993, a stipulation of settled issues was filed in all three dockets. The parties stipulated to all issues except one which was described as follows:

_____

(...continued)
references are to the Tax Court Rules of Practice and Procedure.

The only issue remaining in dispute between the parties is whether petitioners are entitled to interest expense deductions claimed in connection with Peng Partners. This issue relates to the Merit project and either will be resolved by the parties or submitted to the Court for resolution.

As a result of a continuing dispute as to the proper interpretation of terms of the stipulation, a number of motions were filed and resolved by the Court.[2] When cross-motions for orders to show cause were filed in March and April 1996, the Court set these cases for hearing at a session scheduled to take place in New York, New York. The cases were ultimately submitted fully stipulated.

## Background

At the time the petitions were filed, petitioners resided in New York, New York. During 1977 through 1980, petitioner Dwight E. Lee (petitioner) was a partner in an entity known as Peng Partners. During those years, Peng Partners participated in "Arbitrage and Carry" (A/C) transactions promoted by FTI. In 1979 and 1980, Peng Partners also participated in T-Bill options transactions through Merit. This Court has considered both the FTI A/C transactions and the Merit T-Bill options transactions in cases involving Merit Securities. See Seykota v. Commissioner, T.C. Memo. 1991-234, supplemented by T.C. Memo. 1991-541.

---

2 Other investors also disputed the terms of apparent agreements with respect to transactions with FTI/Merit. See, for example, Lamborn v. Commissioner, T.C. Memo. 1994-515.

Although the record in these cases is sketchy and not entirely clear, it appears that the parties agree that the transactions at issue here are factually the same as those we addressed in the Seykota opinions.

In those opinions, we found that the FTI transactions were, fundamentally, cash and carry tax shelters. In simplified terms, an investor would borrow large sums of money. He would acquire gold with the loan proceeds. He would also enter into contracts to sell that gold at a specified time in the future. In the gold markets, the price which the investor paid for the gold was lower than the price at which he agreed to sell that gold in the future. The difference between these two prices largely reflected the amounts of interest and other carrying charges that the investor would incur while he owned the gold. The A/C customer would deduct the interest charges plus other carrying charges--such as charges for management, insurance, and storage-- in the year he borrowed the money. These deductions offset other ordinary income for that year. When he sold the gold in the next year, the investor would report the gain at favorable capital gains rates. The net gain approximately equaled the costs of the interest and other carrying charges. In effect, the investor could defer the taxation of income, at rates as high as 70 percent, for a year. He could also convert that income into capital gains taxable at maximum rates no higher than 28 percent. As an integral part of the FTI A/C transactions, the investors

were placed in a number of alleged trades involving options in U.S. Treasury obligations. These trades were to function as alleged "hedges" against losses in the gold trades.

In the present cases, the stipulation of settled issues resolved all the issues before the Court except whether petitioners are entitled to investment interest expense deductions resulting from Peng Partners' participation in the FTI A/C transactions.  The investment interest expense deductions in issue are as follows:

| Year | Amount |
|------|--------|
| 1977 | $6,618 |
| 1978 | 29,957 |
| 1979 | 18,037 |
| 1980 | 17,771 |

## Discussion

Respondent's determination that the claimed interest expense deductions are not deductible is presumptively correct, and petitioners bear the burden of proving that respondent's determination is erroneous.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The fact that these cases are fully stipulated does not relieve petitioners of that burden.  Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Section 163(a) generally permits the deduction of "all interest paid or accrued within the taxable year on

indebtedness". The deductibility of interest, however, is subject to an important exception. Interest is not deductible where the underlying indebtedness lacks economic substance beyond the taxpayer's desire to obtain an interest deduction. Goldstein v. Commissioner, 364 F.2d 734, 741-742 (2d Cir. 1966), affg. 44 T.C. 284 (1965).

In Goldstein, the taxpayer sought to reduce the income taxes that she would owe on sweepstakes winnings. Accordingly, in prearranged transactions, she borrowed $945,000 from commercial banks at 4 percent interest and purchased $1,000,000 in Treasury notes paying 1-1/2 percent interest. The Treasury notes secured her loans. She then prepaid the interest on the bank loans and sought to deduct the amount of the interest as an offset against the sweepstakes income. The net effect of these transactions was to produce an economic loss that was more than offset by tax savings from the deduction of the prepaid interest. We sustained the Commissioner's disallowance of the deduction, and the Court of Appeals for the Second Circuit affirmed. The Court of Appeals for the Second Circuit explained that section 163(a) "does not permit a deduction for interest paid or accrued in loan arrangements * * * that cannot with reason be said to have purpose, substance, or utility apart from their anticipated tax consequences". Goldstein v. Commissioner, 364 F.2d at 740.

We applied the reasoning of Goldstein in Julien v. Commissioner, 82 T.C. 492 (1984). In Julien, we denied most of

the claimed interest deductions at issue because the taxpayer had failed to prove that the transactions giving rise to such deductions had actually taken place. In one instance, however, we accepted the taxpayer's representation that he had purchased silver worth $1,033,280 on October 31, 1975, and simultaneously agreed to sell the same amount of silver at a price of $1,058,776 on January 6, 1976. There was thus an indicated gain of $25,496. The taxpayer borrowed the purchase price from an affiliate of the promoter. The taxpayer paid $24,996.81 as interest on that amount on December 19, 1975. He paid commissions of another $662. The terms of his loan agreement effectively precluded him from further disposition of either the silver he had purchased or his contract to sell that silver. There was thus no way for the taxpayer to profit from that transaction; his indicated gain of $25,496 was more than offset by his interest and commission expenses. We disallowed the deduction of the interest expense for 1975. Quoting Goldstein v. Commissioner, supra at 742, we stated: "Section 163(a) does not 'intend' that taxpayers should be permitted deductions for interest paid on debts that were entered into solely in order to obtain a deduction." Julien v. Commissioner, supra at 509.

We applied the same principle in Sheldon v. Commissioner, 94 T.C. 738, 760-762 (1990). There the issue was whether certain repurchase agreements, called "repos", generated interest deductions. A repo is an agreement to finance the purchase of a

Treasury bill (or T-Bill) by selling the T-Bill to another party with an agreement to repurchase the T-Bill, for the original selling price plus interest, on or before the T-Bill's maturity date. We observed that the transactions were designed so that the interest that the taxpayer paid in repurchasing the T-Bill was greater than the interest actually paid by the T-Bill during the period the repo was in effect. We found that the repo transactions were without substance beyond the anticipated tax consequences of generating interest deductions. Citing Goldstein, we explained that "loans or other financing transactions will merit respect and give rise to deductible interest only if there is some tax-independent purpose for the transactions." Sheldon v. Commissioner, supra at 759.[3]

These cases present the issue of the deductibility of interest in FTI A/C transactions. In these transactions, the investors borrowed money which was used to buy gold. Their investments were "hedged" by alleged trades in options for U.S. Treasury obligations. The transactions generated interest and other deductions. The investors recovered their investment in

---

[3] In Sheldon v. Commissioner, 94 T.C. 738, 767 (1990), we noted that some of the transactions at issue presented "a small potential for gain". We nonetheless found Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), affg. 44 T.C. 284 (1965), dispositive, stating: "The principle of that case would not * * * permit deductions merely because a taxpayer had or experienced some de minimis gain." Sheldon v. Commissioner, supra at 767; see Lifschultz v. Commissioner, 393 F.2d 232 (2d Cir. 1968), affg. T.C. Memo. 1966-225.

the next taxable year when the gold was sold.  We earlier addressed the deductibility of interest arising from these transactions in Seykota v. Commissioner, T.C. Memo. 1991-234 (Seykota I), supplemented by T.C. Memo. 1991-541 (Seykota II).

In Seykota I, we found that the FTI A/C transactions lacked economic substance.  We therefore disallowed the taxpayers' claimed deduction of losses incurred as a result of their participation in that program.  We made an exception for the deduction of interest paid in connection with borrowing funds to participate in the program.  On the Commissioner's motion for reconsideration, however, we modified that opinion.  Citing Goldstein, Julien, and Sheldon, we held in Seykota II that the taxpayer could not deduct interest expenses paid to borrow funds to acquire gold in connection with FTI A/C transactions.  Based on the record before us in Seykota II, the interest payments appeared to be integral parts of transactions that "Seen as a whole * * * lacked economic substance or any purpose other than generating tax deductions".  Id.  The taxpayers had the burden of persuading us otherwise, and, when they failed to do so, we sustained the Commissioner's disallowance of the claimed interest deductions.

Respondent maintains that the interest deductions at issue here are factually indistinguishable from those we addressed in Seykota II.  Respondent accordingly concludes that the reasoning

we applied in Seykota II controls here and that the interest deductions are not allowable.

Petitioners, however, argue that our holding in Seykota II has been vitiated by our subsequent opinion in Lieber v. Commissioner, T.C. Memo. 1993-424. In Lieber, the Commissioner disallowed deductions relating to a computer leasing tax shelter. The Court held that the majority of the deductions at issue were not allowable. The Court, however, permitted the taxpayers to deduct interest paid upon indebtedness they incurred in order to invest in the computer leasing transaction. In so holding, the Court quoted, as dispositive precedent, the following language from Jacobson v. Commissioner, 915 F.2d 832, 840 (2d Cir. 1990), revg. on other grounds T.C. Memo. 1988-341:

> Even if the motive for a transaction is to avoid taxes, interest incurred therein may still be deductible if it relates to economically substantive indebtedness. Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 96 (4th Cir. 1985). * * *

Both Lieber and Jacobson explicitly adopt the holding in Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 96 (4th Cir. 1985), affg. in part and revg. in part 81 T.C. 184 (1983). Rice's Toyota World, Inc., addressed the case of a taxpayer who borrowed money to invest in a tax shelter. Part of the indebtedness was secured by a short-term recourse note. The Court of Appeals for the Fourth Circuit affirmed our disallowance of most of the deductions at issue. With respect to the taxpayer's loan transaction, however, the Court of Appeals found

that the debt secured by the short-term recourse note was valid and that the taxpayer could deduct interest paid on that note to the lender.

We adopted the reasoning of Rice's Toyota World, Inc. in Rose v. Commissioner, 88 T.C. 386, 423 (1987), affd. 868 F.2d 851 (6th Cir. 1989). Accordingly, our opinions in Lieber and Jacobson conclude that, in situations such as that presented in Rice's Toyota World, Inc., the interest is deductible.

The situation in the Rice's Toyota World, Inc. line of cases, which allows interest deductions, is, however, distinguishable from the situation in the Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), line of cases, wherein the courts have disallowed the claimed interest deductions. The Court of Appeals for the Third Circuit has provided a detailed discussion of that distinction in United States v. Wexler, 31 F.3d 117, 125-127 (3d Cir. 1994). There the Court of Appeals had before it a repo transaction, virtually identical to that addressed in Sheldon v. Commissioner, 94 T.C. 738 (1989), and similar in concept to the situations in Goldstein, Julien v. Commissioner, 82 T.C. 492 (1984), and Seykota.

Addressing first the transaction that yielded deductible interest in Rice's Toyota World, Inc., the Court of Appeals for the Third Circuit explained:

> [The] transaction was unusual because the interest
> payments on the recourse note were separable from the
> interest payments and depreciation that would have

created the principal benefits of the transaction.
* * * [Wexler v. Commissioner, supra at 125.]

In contrast, in the repo situation--

[Taxpayer's] case differs in a critical respect.  There
is no debt obligation that can be separated from the
underlying * * * scheme or that was undertaken for some
reason other than the tax benefits of deducting
interest on that obligation itself. * * * [Id. at 125-
126.]

The Court of Appeals for the Third Circuit noted that in the
repo situation, "the loan * * * is the very obligation that will
generate the interest payments constituting the tax benefits of
the entire transaction."  Id. at 126.  It accordingly rejected
the taxpayer's argument that the debt was "an economically
substantive 'genuine indebtedness'".  Id.

We have applied a distinction similar to that described by
the Court of Appeals for the Third Circuit in Wexler to cases
involving the FTI A/C program.  In Seykota II, we determined that
the interest payments were not separable from the underlying
scheme; instead, as we explained, the "interest payments merely
functioned as the first part of a scheme for the mismatching of
deductions and income".  We concluded that the FTI A/C
transactions "lacked economic substance or any purpose other than
generating tax deductions".  We accordingly denied the interest
deductions at issue.

We returned to that issue in Alessandra v. Commissioner,
T.C. Memo. 1995-238, an opinion issued after Lieber v.
Commissioner, supra.  In Alessandra, the issue was whether the

taxpayer was taxable upon interest <u>income</u> generated by participation in FTI A/C transactions.  There we concluded that the transactions giving rise to the indebtedness possessed economic substance and were separable from those aspects of the program that lacked economic substance.  We cited <u>Lieber</u> and <u>Jacobson v. Commissioner</u>, <u>supra</u>, as well as the other pertinent authorities, in holding that the evidence of record, as developed in <u>Alessandra</u>, demonstrated that "Each of the transactions * * * had distinct economic utility other than any anticipated tax benefits".  <u>Allesandra v. Commissioner</u>, <u>supra</u>.  We distinguished the situation in Seykota II, where "the disallowed interest deductions were the tax benefit to be obtained".  <u>Id.</u>

An appeal in these cases would be to the Court of Appeals for the Second Circuit.  The Court of Appeals for the Second Circuit explained, in <u>Jacobson</u>, that the deductibility of interest in sham situations is limited to "economically substantive indebtedness."  <u>Jacobson v. Commissioner</u>, 915 F.2d at 840.  Neither <u>Jacobson</u> nor <u>Lieber</u> (which relied on <u>Jacobson</u>) suggests that interest is deductible where--

> There is no debt obligation that can be separated from the underlying * * * scheme or that was undertaken for some reason other than the tax benefits of deducting interest on that obligations itself. * * * [<u>United States v. Wexler</u>, <u>supra</u> at 125-126.]

The Second Circuit's earlier opinion in <u>Goldstein</u> stated:

> We here decide that Section 163(a) does not "intend" that taxpayers should be permitted deductions for interest paid on debts that were entered into solely in

order to obtain a deduction. * * * [Goldstein v. Commissioner, 364 F.2d at 742.]

In Lieber v. Commissioner, T.C. Memo. 1993-424, we quoted this sentence and posed the question whether Goldstein v. Commissioner, supra, conflicted with the Second Circuit's later opinion allowing interest deductions in Jacobson v. Commissioner, supra. Clearly, Jacobson (which did not mention Goldstein) supports the principle that interest deductions are not rendered nondeductible merely because the proceeds are used to invest in a sham tax shelter transaction; in some cases the underlying indebtedness might still be "economically substantive".[4] Jacobson v. Commissioner, 915 F.2d at 840. Jacobson thus indicates that the language of Goldstein would not apply so broadly that it would deny all interest deductions that are related to sham transactions. We believe, however, that Goldstein continues to apply to the narrower situation where a taxpayer enters into a borrowing transaction for no purpose other than to claim the deductions generated by that transaction

---

[4] Indeed, in United States v. Wexler, 31 F.3d 117, 127 (3d Cir. 1994) the Court of Appeals for the Third Circuit explained:

> Rice's Toyota, Jacobson and Lieber indicate that, in some circumstances, a sham transaction may have separable, economically substantive, elements that give rise to deductible interest obligations. * * * [Fn. ref. omitted.]

The court continued, however, "Yet in each of those cases a key requirement is that the interest obligation be economically substantive". Id.

itself; such a transaction is <u>not</u> economically substantive.  Both <u>Rice's Toyota World, Inc. v. Commissioner</u>, 752 F.2d 89 at 96, and <u>Rose v. Commissioner</u>, 88 T.C. at 423, specifically distinguish <u>Goldstein</u> from situations in which interest deductions were allowable.  See <u>Muserlian v. Commissioner</u>, 932 F.2d 109, 113 (2d Cir. 1991) (decided after <u>Jacobson</u>), affg. T.C. Memo. 1989-493; see also <u>United States v. Wexler</u>, 31 F.3d at 126 n.11.[5]

In these cases, as in Seykota II, petitioners have not shown that interest payments in the FTI A/C transactions were separable from the interest payments and other deductions "that would have created the principal tax benefits of the transaction."  <u>United States v. Wexler</u>, <u>supra</u> at 125.  The latter type of sham transactions are those presented in <u>Wexler</u>, <u>Goldstein</u>, <u>Julien</u>, <u>Sheldon</u>, and, as we held in Seykota II, in the FTI A/C transactions.  In those cases the taxpayers paid no interest on economically substantive indebtedness that was separable from the sham transaction itself.  Accordingly, we sustain respondent's disallowance of the interest deductions at issue.[6]

---

[5]  In the <u>Goldstein</u> line of cases--<u>Julien</u>, <u>Sheldon</u>, <u>Wexler</u>, and, as we held in Seykota II, in the FTI A/C transactions--the taxpayers borrowed large sums of money and simultaneously entered into offsetting transactions.  These transactions lacked economic substance.  Instead, the effect was that of a taxpayer "actually borrowing his own money to create interest expense".  <u>Muserlian v. Commissioner</u>, 932 F.2d 109, 113 (2d Cir. 1991), affg. T.C. Memo. 1989-493.

[6]  Apparently, the deductions generated by the FTI A/C transactions included not only the interest deductions at issue,
(continued...)

We are not persuaded otherwise by petitioners' further argument that respondent has made a number of "concessions" in the stipulations of settled issues.  Petitioners claim that these concessions require respondent to concede that the interest expenses at issue are deductible.  Respondent counters that the alleged "concessions" merely reflect this Court's holdings in the Seykota opinions.  The record before us in these fully stipulated cases does not support petitioners' assertions.  Suffice it to say that petitioners have not shown that the claimed concessions operate to confer economic substance upon the transactions at issue.  On this record, those transactions are indistinguishable from those we found to lack economic substance in Seykota II.  Accordingly, the interest generated by those transactions is not deductible.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

(...continued)
but also other deductions for items such as management fees or storage charges.  However, neither here, nor in Seykota, have taxpayers proven that the existence of such other deductions make the underlying obligation one of economic substance "that can be separated from the underlying * * * scheme".  United States v. Wexler, 31 F.3d 117, 125-126 (3d Cir. 1994).